## STATE v. CITY OF SHERIDAN.

(No. 849;  Decided January 21st, 1918;  170 Pac. 1.)

CONSTITUTIONAL LAW—FREEDOM OF OCCUPATION—LICENSES—POWER TO REGULATE VOCATIONS — POLICE POWER — STATUTE — MUNICIPAL ORDINANCES — CLASS LEGISLATION — CEMENT CONTRACTOR — MANDAMUS—MANDATORY STATUTE—COSTS.

1. The right to follow any of the common occupations of life, or to earn one's living in an innocent vocation without let or hindrance is one of those inalienable rights guaranteed by national and state constitutions.

2. A statute passed pursuant to the police power should be reasonable. Its real purpose must be to protect public health, morals or general welfare.

3. The vocation of a cement contractor is not a proper subject of police regulation by a city, as it does not affect either the health, morals, safety or welfare of the public generally, so as to be a necessary subject of regulation.

4. Cities of the first class are without power to regulate the vocation of cement contractor by requiring a license and bond of those who follow that occupation. Section 1681, Comp. Stats. 1910, does not confer such power and none can be implied from the powers granted.

5. A municipal ordinance enacted by a city of the first class requiring cement contractors to obtain a license and give a maintenance bond for five years is void, it not being within the power of such municipalities to regulate the business of

cement contracting, and if the power were given, the bond requirement is unreasonable.

6. A municipal ordinance enacted by a city of the first class requiring a license fee and bond from one laying concrete or cement sidewalks is discriminatory and class legislation, in that it requires neither from those laying sidewalks composed of asphalt, granite, vitrified brick or other hard or incombustible material.

7. The right of one engaged in and following the business of laying concrete sidewalks and making his living that way cannot be disputed and unless it can be shown that his work affects the public health, morals, safety or welfare, the state would have no power to restrict or prohibit it, and no power to delegate such power to a municipality.

8. Where the statutes and ordinances of a city of the first class required property owners either to construct or pay the cost of construction or repair of sidewalks adjoining their property, another ordinance of the city attempting to regulate the business of constructing cement sidewalks by providing that no person should engage in the business until he had obtained a cement contractor's license and had given a maintenance bond was void, as interfering with the free right of the property owner to contract.

9. Compiled Statutes, Section 5068, providing that if judgment be given for defendant in a mandamus suit, all costs shall be adjudged against relator is mandatory and leaves the court no discretion as to taxing costs where judgment must be for defendant.

ERROR to District Court, Sheridan County; HON. C. H. PARMELEE, Judge.

Mandamus in the name of the State of Wyoming on the relation of C. W. Sampson against the City of Sheridan, a municipal corporation, and its officers, mayor and commissioners to compel the issuance to relator of a cement contractor's license.

From a judgment dismissing the petition and an order overruling motion for a new trial, relator brings error.

*H. Glenn Kinsley,* for plaintiff in error.

The court erred in holding the ordinance void. Section 1681, Comp. Stats. 1910, authorizes the City of Sheridan to require a license from those engaged in the business of

·cement contracting.  The City of Sheridan has powers con-
ferred upon it to regulate any business or calling in the
interests of the welfare of the city.  (Section 1707, Comp.
Stats. 1910.)    But such regulations must be reasonable.  (1
Dillon Mun. Corp. (4th Ed.), Sec. 328;  Champer v. City
of Greencastle (Ind.), 35 N. E. 14.)    The power cannot be
used to suppress useful occupations.    (Vol. III, McQuillin
Mun. Corps., Sec. 990, p. 2202;  In re. Quong Woo, 13
Fed. 229;  State v. Mott, 61 Md. 297;  Balimon v. Rakecke,
49 Md. 217;  Lyons v. Copper, 39 Kan. 324, 18 Pac. 296;
Cowell v. Lincoln, 19 Neb. 569, 27 N. W. 647;  Americus
v. Burner, 131 Ga. 802, 63 S. E. 347;  Walnut v. Barnett,
141 Ill. Appeals, 367;  Owen County Friscal Ct. v. F. & A.
Cox Co. (Ky. 1909), 117 S. W. 296.)    Powers granted to
municipal corporations are strictly construed, and doubts
are resolved against the corporation.    (Friend v. City of
Chicago, 261 Ill. 16, 103 N. E. 609, 49 L. R. A. N. S. 438;
Chicago v. M. & M. Hotel Co., 248 Ill. 264, 93;  Chicago v.
Ross, 257 Ill. 76, 43 L. R. A. N. S. 205, 100 N. E. 159.)
Gray v. Omaha (Neb.), 114 N. W. 600, 14 L. R. A. N. S.
1033, turned upon the reasonableness of the ordinance and
not upon the power of the city to enact it.    Where a por-
tion of an ordinance or statute may be upheld and is sever-
able from the rest, it is deemed invalid.    The valid portion
may stand, but otherwise the entire statute falls.    (Ham-
ilton Band v. Dudley, 2 Pet. 492, 7 U. S. (L. Ed.) 496;
Keokuk Northern Line Packer Co. v. Keokuk, 95 U. S. 80,
24 U. S. (L. Ed.) 377;  Allen v. Louisiana, 103 U. S. 80,
26 U. S. 318;  Penniman's Case, 103 U. S. 714, 26 U. S.
(L. Ed.) 602;  Albany County v. Stanley, 105 U. S. 305,
26 U. S. (L. Ed.) 1044;  Presser v. Illinois, 116 U. S. 252,
6 S. Ct. 580, 29 U. S. (L. Ed.) 615;  Field v. Clark, 143
U. S. 649, 12 S. Ct. 495, 36 U. S. (L. Ed.) 294;  Connolly v.
Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 U. S.
(L. Ed.) 679;  Cella Commissions Co. v. Bohlinger, 147
Fed. 419, 78 C. C. A. 476, 8 L. R. A. N. S. 537;  Chicago
M. & St. P. R. Co. v. Westby, 178 Fed. 619, 102 C. C.
A. 65, 47 L. R. A. N. S. 97;  Hoxie v. New York, N. H.

& H. Ry. Co., 82 Conn. 352, 73 Atl. 754, 17 Ann. Cas. 324;
Ballentine v. Willey, 3 Idaho, 496, 31 Pac. 994, 95 A. S. R.
17, and note; Chicago &c. R. Co. v. Jones, 149 Ill. 361, 37
N. E. 247, 41 A. S. R. 278, 24 L. R. A. 141; Taggart v.
Claypool, 145 Ind. 590, 44 N. E. 18, 32 L. R. A. 586;
Hammer v. State, 173 Ind. 199, 89 N. E. 850, 140 A. S. R.
248, 21 Ann. Cas. 1034, 24 L. R. A. N. S. 795; State v.
Smiley, 65 Kan. 240, 69 Pac. 199, 67 L. R. A. 903; Fisher
v. McGirr, 1 Gray, 1, 61 Am. Dec. 381; Hathorn v. Na-
tural Carbonic Gas Co., 194 N. Y. 326, 87 N. E. 504, 128
A. S. R. 555, 16 Ann. Cas. 989, 23 L. R. A. N. S. 436;
Rothermel v. Meryerle, 136 P. St. 250, 20 Atl. 583, 9 L. R.
A. 366; Commonwealth v. Moir, 199 Pa. St. 534, 49 Atl.
351, 85 A. S. R. 801, 53 L. R. A. 837; Newport v. Horton,
22 R. I. 196, 47 Atl. 312, 50 L. R. A. 330; Goggans v.
Turnipseed, 1 S. C. 80, 98 Am. Dec. 397, 7 Am. Rep. 23;
Fite v. State, 114 Tenn. 646, 88 S. W. 941, 4 Ann. Cas.
1108, 1 L. R. A. N. S. 520; Bennett v. Vallier, 136 Wis.
193, 116 N. W. 885, 128 A. S. R. 1061, 17 L. R. A. N. S.
486, 66 A. S. R. 505.) The good and bad provisions may
be included in one section and yet be separable. (Loeb v.
Columbia Twp. Trustees, 179 U. S. 472, 21 S. Ct. 174, 45
U. S. (L. Ed.) 280; Berea College v. Com. of Kentucky,
211 U. S. 45, 29 S. Ct. 33, 52 U. S. (L. Ed.) 81; Chicago
&c. R. Co. v. Jones, 149 Ill. 361, 37 N. E. 247, 41 A. S. R.
278, 24 L. R. A. 141; Soper v. Lawrence Bros. Co., 98 Me.
268, 56 Atl. 908, 99 A. S. R. 397; State v. Robb, 100 Me.
180, 60 Atl. 874, 4 Ann. Cas. 275; Redell v. Moores, 63
Neb. 219, 88 N. W. 243, 93 A. S. R. 431, 55 L. R. A. 740;
Fayette County Treasurer v. Bank, 47 Ohio St. 503, 25 N.
E. 697, 10 L. R. A. 196; Rothermel v. Meyerle, 136 Pa.
St. 250, 20 Atl. 583, 9 L. R. A. 366; Steed v. Harvey, 18
Utah, 367, 54 Pac. 1011, 72 A. S. R. 789; Nathan v. Spo-
kane County, 35 Wash. 26, 76 Pac. 527, 102 A. S. R. 888,
65 L. R. A. 336.) The same rule applies to ordinances.
(Fort Smith v. Scruggs, 70 Ark. 549, 69 S. W. 679, 91 A.
S. R. 100, 58 L. R. A. 921; State v. Robb, 100 Me. 190, 60
Atl. 874, 4 Ann. Cas. 275, and note; Knoch v. North Ave.

R. Co., 75 Md. 222, 23 Atl. 463, 15 L. R. A. 377; People v. Armstrong, 73 Mich. 288, 41 N. W. 275, 16 A. S. R. 578, 2, L. R. A. 721; St. Louis v. Liessing, 190 Mo. 464, 89 S. W. 611, 109 A. S. R. 774, Ann. Cas. 112, 1 L. R. A. N. S. 918; Eureka City v. Wilson, 15 Utah 67, 48 Pac. 150, 62 A. S. R. 904, and note; Little Chute v. Van Camp, 136 Wis. 526, 117 N. W. 128, A. S. R. 1100.) The purpose of this ordinance is to secure competent cement contractors in making public improvements and this feature of the ordinance should stand. (Santo v. State, 2 Ia. 165, 63 Am. Dec. 487; Somerset Comrs. v. Bridge Co., 109 Md. 1, 71 Atl. 462, 16 Ann. Cas. 874; Commonwealth v. Hana, 195 Mass. 262, 81 N. E. 149, 122 A. S. R. 251, 11 Ann. Cas. 514, 11 L. R. A. N. S. 799; Mutual Loan Co. v. Martell, 200 Mass. 482, 86 N. E. 916, 128 A. S. R. 446, 43 L. R. A. N. S. 746.) The right to follow a useful occupation is a constitutional right. (6 R. C. L. 251; also 244.) The attempt made in the ordinance to restrict the cement business to men of financial standing is unreasonable, oppressive and monopolistic. (Gray v. Omaha, supra.) The court erred in holding that plaintiff exhibited no clear right to mandamus. (Section 5054, Comp. Stats. 1910.) Plaintiff had no adequate remedy at law. Mandamus will lie to require the performance of municipal duties. (Kark v. State, 54 Ohio St. 383, 43 N. E. 920; Flournoy v. Jeffersonville, 17 Ind. 169, 79 Am. Dec. 468.) The court erred in rendering judgment against plaintiff for costs. Plaintiff endeavored to comply with the ordinance and should not be required to pay costs, by reason of the invalidity of the ordinance which was no fault of plaintiff. The court erred in overruling plaintiff's motion for a new trial, it appearing from the record that the judgment was not sustained by the evidence.

*H. N. Gottlieb,* for defendants in error.

The City of Sheridan is a city of the first class with power to levy a license tax on any business or calling. (Section 1681, Comp. Stats. 1910.) And to levy and collect occupation taxes. (Section 1796, Comp. Stats. 1910.) Said

sections confer broad powers to tax for revenue purposes and regulate under the police power. (Dillon M. C., 5th Ed., 1408; also 662, 665 and 666.) Powers indicate an intention to give authority to collect revenue. (25 Cyc. 601.) The authority of municipalities over public streets is broad. (Dillon M. C., 5th Ed., 1120, 1129 and 1149; 22 Ency. Law, 929.) A municipality having power to license may annex other conditions deemed proper. (25 Cyc. 622.) The requirement of a bond in connection with a license is usual, customary and reasonable. (Rumford v. Grocery Co., 88 Atl. 394.) An ordinance is not to be held unreasonable unless clearly so and every intendment will be indulged in its favor. (Harter v. Barkley, 112 Pac. 556.) The evidence showed that a concrete walk should last from twenty to fifty years; a maintenance bond for five years was not unreasonable. A municipality may tax some occupations and regulate some, and refuse to tax or regulate others. (Smith v. Wilkins, 80 S. E. 168.) All that is necessary is uniformity as to given trades or callings. (25 Cyc. 606.) Gray v. Omaha (Neb.), 114 N. W. 600, is not applicable to the laws of this state and it is not an authority. It is not shown that the City of Omaha had power to license occupations either for revenue or as a police regulation. Section 5068, Comp. Stats., applicable to mandamus, provides that if judgment be for defendants, costs shall be adjudged against relator.

BLYDENBURGH, JUSTICE.

This was a suit in mandamus brought in the District Court of Sheridan County in the name of the State on the relation of one C. W. Sampson to compel the City of Sheridan and its officers, mayor and commissioners, to issue to the relator a cement contractor's license.

The City of Sheridan is a city of the first class that has adopted a commission form of government and acting, as is claimed, under the authority conferred by Section 1681, Wyo. Comp. Stat. 1910, had passed and adopted the following ordinance:

"Sec. 440. That no person, or persons, firm or corpora-
tion shall contract for or engage in the business of con-
structing any sidewalk, curb, crossing or other public im-
provement within the City of Sheridan, of concrete, cement
or artificial stone until he, they or it has obtained a 'cement
contractor's license therefor, and has given bond as pro-
vided herein. Such license shall be granted by the city coun-
cil to those experienced in and competent to do such work
and upon written application showing such facts and that
the applicant is 21 years of age, and upon payment of $15.00.
The application should state the full name of the applicant,
and if a firm the names of all the members thereof, and if
a corporation, the state where incorporated, together with
the residence and chief office of such person, firm or corpo-
ration. That any such person, firm or corporation obtain-
ing such license shall give a bond in the amount of $1,000.00
to the City of Sheridan, with good and sufficient surety
conditioned for the faithful performance of all such work
in accordance with the plans and specifications therefor and
the directions of the city engineer, and in accordance with
the ordinances of the city, and guaranteeing all such work
done by him under such license to remain in good condition
for 5 years after the completion thereof, and protecting the
city or any person or corporation who may be required by
the city to have such work done, against any loss from de-
fects in said work appearing during the said 5 years (in-
juries from fire or other unavoidable causes excepted)."

Section 1681, Comp. Stat. 1910, is included in Chapter
121, which provides for cities of the first class and reads
as follows:

"They shall have power to regulate, license and tax ho-
tels, restaurants and eating houses; to define by ordinance
who shall be considered transient merchants; to regulate,
license and tax their sales, and those of auctioneers, bank-
rupt and dollar stores, and the like; but the exercise of
such power shall not interfere with sales made by any
person required by law to sell real or personal property;
to regulate, license and tax peddlers, plumbers, bill-posters,

itinerant doctors, itinerant physicians and surgeons, junk
and second-hand dealers, scavengers, pawnbrokers and per-
sons receiving actual possession of personal property as se-
curity for loans; to prohibit pawnbrokers and junk or sec-
ond-hand dealers purchasing or receiving from minors any
property, and provide for the examination of premises of
such persons for the purpose of discovering stolen prop-
erty; to license and regulate employment offices and intel-
ligence offices; to raise revenue by levying and collecting
a license tax on any business, or calling, or any corporation,
and regulate the same by ordinance; to regulate, license or
prohibit circuses, menageries, theaters, theatrical exhibi-
tions, shows and exhibitions of all kinds; but lectures on
scientific, historical or literary subjects shall not come within
the provisions of this section."

It is established by the evidence that the relator was en-
gaged in the occupation of mixing and laying cement and
concrete sidewalks and had been engaged in such occupa-
tion for more than ten years and is what is termed by the
witnesses a "cement contractor"; that he was competent
and skilled in this occupation, and that the work he had
done was of a first-class character; that he made applica-
tion for a license in due form, filing the same with the city
clerk, and paid $15.50, the license fee prescribed by the
ordinance, and fifty cents required to be paid for filing the
application, which money was still retained by the city at
the time of the hearing in the court below; that he did not
give or tender any bond as provided in the ordinance; that
he had applied for a bond to an agent of a surety company,
but had been refused a bond because he could not make a
sufficient showing as to his financial standing, he not being
possessed of any real estate or bank account; that the min-
utes of the meeting of the city council of the City of Sher-
idan held March 29, A. D. 1915, contains the following:
"The application of C. W. Sampson for cement contrac-
tor's license was read and action deferred until the filing of
cement contractor's bond to cover same."

The trial court found that Section 440, Chapter 25, of the Compiled Ordinances of the City of Sheridan, requiring a license fee of $15.00 and $1,000 maintenance bond of persons engaged in the business of constructing sidewalks of concrete, cement or other artificial stone is void, and that the City of Sheridan had no authority to pass the same and no authority to enforce the same, and that the relator has exhibited no clear right to the writ or the relief prayed for, or any relief, and rendered judgment dismissing the peti-. tion and taxed costs in the amount of $8.45 against the relator and $6.00 against the respondents. Both parties excepted to the findings and judgment in so far as they were adverse to the parties respectively, and a motion for a new trial alleging that the judgment is not sustained by the evidence and is contrary to law was filed on behalf of the relator and was overruled and the case is brought here on error by the relator.

The judgment of the lower court is not satisfactory to either party. The city, although it did not institute any proceedings in error, while not objecting to the judgment dismissing the petition, contends here that the ordinance declared void is a valid exercise of the powers conferred on the city by the statute and should be declared to be valid and in full force and effect. While the relator is willing to have the ordinance sustained except as to the requirement of giving the bond, which he claims is an unreasonable reg-' ulation and therefore void, and such provision being easily separated from the rest of the requirements of the ordinance, it can be declared void and the rest of the ordinance can stand, and a cement contractor's license should be issued to him without his being required to furnish the bond as provided in the ordinance.

This is a case of first impression in this court, the particular questions involved never having before arisen in this state, and in fact the question of the right of a municipality under the police power to regulate the business and occupation of mixing and laying cement or concrete sidewalks has been before the courts as found by an exhaustive

search of the reported cases in one case only, viz.: Gray v. The City of Omaha (Neb.), 114 N. W. 600, 14 L. R. A. N. S. 1033. There is a sharp distinction between a license for revenue and one of regulation under the police power; the first named being a tax and construed under the principles and rules governing taxing powers, the latter under the police power looking toward the health, morals, safety or general welfare of the community, and it is generally held that power to regulate occupations does not in itself give the power to license for revenue or tax the same occupations or that a given power to license for revenue does not in itself give power to license for regulation under the police power. The statute relied on in this case to give the power (Sec. 1681, Comp. Stat., supra) specifically gives the double power to tax and regulate many businesses and occupations, but does not specifically mention the vocation or occupation the subject of the ordinance under consideration, but it is claimed to be covered by the general clause contained in the section, viz.: "to raise revenue by levying and collecting a license tax on any business, or calling, or any corporation, and regulate the same by ordinance." It is evident that the primary object of this clause is to give the power to tax for revenue occupations and callings and the regulation is only incidental to the taxing power conferred; while it is equally evident that the object of the ordinance is the regulation of those following the occupation of laying concrete or cement sidewalks.

"The general rule deducible from the adjudications is that, the power of the municipal corporation to impose a license tax, either as a police regulation or for revenue, is made to depend upon the reasonable construction of the charter provision or the legislative act conferring the authority; and if it appears that such power has not been granted in *unequivocal terms,* invoking the rule of strict construction, the right to levy the tax will be denied." (McQuillin Municipal Corp., Vol. 3, Sec. 987; also Dillon Munic. Corp. (5th Ed.), Sec. 667; 17 R. C. L., p. 525.)

The right to follow any of the common occupations of life or to earn one's living in any innocent vocation without let or hindrance is one of those inalienable rights covered by the statements in the Declaration of Independence and secured to all those living under our form of government by the liberty, property and happiness clauses of the national and state constitutions.   (6 R. C. L., p. 266, and cases cited; Butchers' Union Slaughter-House Co. v. Crescent City Live Stock Co., 111 U. S. 746, 4 Sup. Ct. 652; 28 L. Ed. 585; Tolliver v. Blizzard, 143 Ky. 773, 137 S. W. 509, 34 L. R. A. (N. S.) 890; Bessette v. People, 193 Ill. 334, 56 L. R. A. 558, 62 N. E. 215; 12 C. J. 921, and cases cited in notes; Commonwealth v. Beaulieu, 213 Mass. 138, 99 N. E. 555, 30 Ann. Cas. 1080.)   In the case of Butchers' Union Slaughter-House Co. v. Crescent City Live Stock Co., supra, Justice Field, on page 757 of 111 U. S., on page 661 of 4 Sup. Ct., 28 L. Ed. 585, said:

"It has been well said that, 'The property which every man has in his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable. The patrimony of the poor man lies in the strength and dexterity of his own hands, and to hinder his employing this strength and dexterity in what manner he thinks proper, without injury to his neighbor, is a plain violation of. this most sacred property.   It is a manifest encroachment upon the just liberty both of the workman and of those who might be disposed to employ him.   As it hinders the one from working at what he thinks proper, so it hinders the others from employing whom they think proper.'   Adam Smith's Wealth of Nations, Bk. I, Chap. 10."   These rights, however, are under the maxim, *"Sic utere tuo ut alienum non laedas,"* subject to reasonable restraint and regulation as are required to protect the public health, safety, morals and general welfare, and this is the police power, but all such regulations to be a valid exercise of the police power must tend "in some degree towards the prevention of offenses, or the preservation of the public health, morals, safety or welfare.   It must be apparent that some such end

is the one actually intended, and that there is some connection between the provisions of the law and such purpose."
(Tolliver v. Blizzard, supra, 143 Ky. 773, 137 S. W. 509, 34 L. R. A. (N. S.) 893, 894, 17 R. C. L., p. 542.)

"To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." (Lawton v. Steele, 152 U. S. 136, 14 U. S. Sup. Ct. Rep. 500, 38 U. S. (L. Ed.) 385.) "It is not sufficient that the public sustains harm from a certain trade or employment as it is conducted by some engaged in it. Because many men engaged in the calling persist in so conducting the business that the public suffers, and their acts cannot otherwise be effectually controlled, is no justification for a law which prohibits an honest man from conducting the business in such a manner as not to inflict injury upon the public." (Tolliver v. Blizzard, supra.) "In order that a statute or ordinance may be sustained as an exercise of the police power, the courts must be able to see that the enactment has for its object the prevention of some offense or manifest evil or the preservation of the public health, safety, morals, or general welfare, that there is some clear, real, and substantial connection between the assumed purpose of the enactment and the actual provisions thereof." (12 C. J. 929; In matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636.) The police power has been termed the "Law of overwhelming necessity." (Dunne v. People, 94 Ill. 120, 34 Am. Rep. 213.) And even where the matter under consideration has been held a proper subject for regulation all regulations must be reasonable and only go so far as are reasonably necessary to effect the legitimate object of the public protection sought. (12 C. J. 934.)

"There must be reasonable ground for the police interference, and also the means adopted must be reasonably necessary for the accomplishment of the purpose in view. So, in all cases where the interference affects property and goes beyond what is reasonable by way of interfering with private rights, it offends against the general equality clause of the constitution; it offends against the spirit of the whole instrument." (Bonnett v. Vallier, 136 Wis. 192, 202, 116 N. W. 885, 128 Am. St. Rep. 1061, 17 L. R. A. (N. S.) 486, 491.

"A municipality has power to enact reasonable ordinances only, and that the court will annul ordinances which are unreasonable, illegal or repugnant to law is a doctrine uniformly sustained. (Jones v. Sanford, 66 Me. 585; State v. Robb, 100 Me. 180, 4 Ann. Cas. 275, 60 Atl. 874.)" (State v. Starkey, 112 Me. 8, 90 Atl. 431, Ann. Cas. 1917A, 196, 198.) "A statute passed pursuant to the police power should be reasonable. Its real purpose must be to protect the public health, morals or general welfare. A statute cannot, under the guise of the police power, but really to affect some purpose not within such power, arbitrarily interfere with a person or a property right. The statute under consideration unnecessarily interferes in several particulars with that liberty of person and property guaranteed by the constitution." (People v. Ringe, 197 N. Y. 143, 149, 90 N. E. 451, 27 L. R. A. N. S. 528, 18 Ann. Cas. 474.) And such regulations must not be such as to discriminate between persons engaged in the same or like vocations or they will be void as "class legislation." (People v. Weiner, 271 Ill. 74, 110 N. E. 870; 1916C. L. R. A. 768, 779; 28 Cyc. 370, 390; Ann. Cas. 1917C. 1065.)

Viewing the ordinance in question in the light of the above principles, we are constrained to hold that it is unconstitutional and void because: First, that the vocation of cement contractor is not a proper subject of police regulation, not affecting either the health, morals, safety or welfare of the public generally so as to be a necessary subject of regulation. Second, that no express power to

regulate this vocation is conferred upon the city and none can necessarily be implied from the powers granted. Third, that, were the power given, the regulations required are unreasonable, especially in requiring a maintenance bond to run five years. Fourth, that the ordinance is discriminatory and class legislation in that it requires a fee and bond from one laying concrete or cement sidewalks and requires neither from those laying sidewalks composed of asphalt, granite, vitrified brick or any other hard and incombustible material. As said in Gray v. Omaha, supra: "It should not be sustained unless vitally necessary to the exercise by the city of the power to designate the material and manner of construction of its walks. No adequate reason why it is essential to the exercise of this power is pointed out in the argument of defendant; and we have been unable to conceive one." The other ordinances of the City of Sheridan introduced in evidence provide, (Sec. 730) that no person shall construct, reconstruct or remove any sidewalk without first obtaining a permit from the city engineer and prescribes that the permit shall be filed with a return thereon showing date of completion of the work; (Sec. 732) that the construction of all sidewalks and curb of artificial stone shall be constructed under the supervision of the city engineer or his inspector and shall at all times be subject to the inspection of the city engineer or his inspector; (Sec. 720) that all sidewalks hereafter constructed, reconstructed or placed within the City of Sheridan shall be of granite, cement, concrete, asphaltum, vitrified brick or some other hard and incombustible material with stone or cement curb not less than five inches thick, and that all cement or concrete sidewalks shall be constructed in accordance with the specifications and rules in relation thereto prepared by the city engineer, and approved by the city council and making it unlawful to construct any such sidewalk in any other manner than in accordance with such specifications or rules, and also making it unlawful to construct any sidewalk of a different character than concrete or cement except in accordance with specifications and rules applicable to such

construction prepared by the city engineer and approved by the city council.

It is seen that the power of the city to designate the materials, manner of construction, and inspection thereof has been exercised and provided for in ordinances that do not provide for a license fee and bond and cover sidewalks of all kinds of materials that are permitted to be used. The right of the relator to follow the business of laying concrete sidewalks and make his living that way cannot be disputed, and unless it can be shown that this work affects the public health, morals, safety or welfare, the state would have no power to restrict or prohibit it and no power to delegate such power to a municipality. But the Legislature has not attempted to grant such power. We are not referred to any statute that gives the power to regulate the vocation of laying cement sidewalks, nor to any from which that power by necessary implication can be inferred. In the case of Gray v. Omaha, supra, it was decided that the ordinance was void because the right was not granted to regulate, and it is said (14 L. R. A., p. 1034) : "The power to pass a city ordinance must be vested in the governing body by the Legislature in express terms, or be necessarily or fairly implied in and incident to the powers expressly granted; and must be essential to the declared purpose of the corporation; not simply convenient, but indispensable. (Dill. Mun. Corp. (1st Ed), Sec. 55; Anderson v. Wellington, 40 Kan. 176, 2 L. R. A. 110, 10 Am. St. Rep. 175, 19 Pac. 719.) Powers encroaching upon the rights of the public or of individuals must be plainly and literally cor ferred by the charter. (State, Breninger, Prosecutor, v. Belvidere, 44 N. J. L. 350.) The power to license must be plainly conferred, or it will not be held to exist. (Dill. Mun. Corp. (1st Ed), Sec. 295; Dunham v. Rochester, 5 Cow. 462; Com. v. Stodder, 2 Cush. 562, 48 Am. Dec. 679; Mays v. Cincinnati, 1 Ohio St. 268; St. Paul v. Traeger, 25 Minn. 248, 33 Am. Rep. 462.)" But it might as well have been held in addition that it was not within the police power of the state to grant such a power.

Counsel for the defendant city in his brief criticises this Omaha case and infers that the City of Omaha had no power to license occupations either by way of raising revenue or police power regulations. The charter provisions governing the City of Omaha in this matter are found in Cobbey's Annotated Statutes of Nebraska, 1907, Vol. 2, Sec. 7678, contained in Chapter 37, under the heading "Municipal Corporations," "Omaha Charter," which is as follows:

"The mayor and council shall have power to tax for revenue, license and regulate pawnbrokers, peddlers, auctioneers, brokers, hawkers, commission merchants, showmen, jugglers, innkeepers, liquor dealers, toll-bridges, ferries, insurance, telegraph and express companies and venders of patents; such tax may include both a tax for revenue and license. The mayor and city council shall have power to raise revenue by levying and collecting a tax on any occupation or business within the limits of the city and regulate the same by ordinance. All such taxes shall be uniform in respect to the class upon which they are imposed; provided that all scientific and literary lectures and entertainments shall be exempt from taxation as well as concerts and all other musical entertainments given exclusively by the citizens of the city. It shall be the duty of the city clerk to deliver to the city treasurer the certified copy of the ordinance levying such tax and the city clerk shall append thereto a warrant requiring the city treasurer to collect said tax." The power therein given is certainly as broad as the provisions of the Wyoming statute, Section 1681, supra.

The requirement of a maintenance bond of $1,000 to guarantee all work for a period of five years is certainly an unreasonable regulation and restriction upon those engaged in the vocation of mixing and laying cement sidewalks and is not necessary for the safety or welfare of the public. Counsel for the city state that "the requirement of a bond in connection with a license is a usual, customary and reasonable one." We cannot agree with this statement and the cases referred to by counsel are few, and all or nearly

all the cases cited under this statement in his brief were for a bond conditioned on the payment of a license tax or in licensing non-useful businesses, running pool halls and the like, conditioned on obeying the city ordinances, regulations, hours, forbidding minors to frequent such places and the like, and in several of these cases referred to the bond was declared void beyond the term of the license. In fact the requirement of a bond guaranteeing work for five years is so unusual a regulation accompanying a license of occupations under an alleged police power that the only case that has come to our notice where it was attempted, beside the case at bar, was the case of Gray v. Omaha, supra, and in that case it is said: "The only question involved is the right of the city to compel the plaintiff to comply with the requirements of the ordinance as a condition of following his vocation. We think the restrictions imposed by the ordinance are not only unreasonably oppressive, but unnecessary to the exercise of the power to designate the material and manner of construction of such walks. Its provisions must prove onerous to the individual of slender means engaged in the vocation sought to be regulated. He is required to pay a fee of $10 for each year or fraction of a year, a not inconsiderable tax upon a small business. In addition to this he is required to give annually a bond, upon which his sureties will be liable for a period of five years, so that, if he continues in business for that period of time, he will be compelled to furnish five distinct bonds, representing an aggregate liability of $10,000, which is obviously impracticable, unless the applicant be of substantial means and established credit."

In the Omaha ordinance the license fee was $10 and the bond was $2,000 instead of $15 and $1,000, respectively, in the Sheridan ordinance. This ordinance under consideration has the effect of preventing the following of his usual vocation by the relator and others situated like him as regards the possession of property. It was shown by the evidence that the relator could not get a bond from a surety company because he was not possessed of sufficient property

real and personal and, although the ordinance does not require a surety company bond, the evidence discloses that the officers of the city informed the relator that they preferred that kind of a bond to a personal one. And it can well be seen that the difficulty in securing a surety bond because of the lack of property to some considerable extent would operate against obtaining a proper personal bond to guarantee the good condition of a sidewalk for five years, perhaps after the principal had ceased to reside in the city.

It is clearly class legislation. The ordinance of the city permits sidewalks to be constructed of asphalt, granite, vitrified brick and other hard and incombustible material, but requires no license or bond from those laying such sidewalks. While it is established from uniform authority that reasonable and necessary classification is permitted without violation of constitutional provisions, "The classification must be reasonable in view of the object sought to be accomplished. The discrimination must rest upon some reasonable ground of difference between the persons or things included and those excluded, having regard to the purpose of the legislation, and within the sphere of its operation, the statute must affect all persons similarly situated." (State v. Sherman, 18 Wyo. 169, 176, 105 Pac. 299, 27 L. R. A. N. S. 898, Ann. Cas. 1912C. 819.) And the uniform rule is stated by this court in the opinion by Justice Beard in the case of State v. LeBarron, 24 Wyo. 519, on page 526, 162 Pac. 265, on page 266.

"As to classifications which are permitted and which do not violate constitutional provisions, it is the uniform rule that the reason for the classification must inhere in the subject-matter, and must be natural and substantial, and must be one suggested by necessity, by such difference in the situation and circumstances of the subjects as to suggest the necessity or propriety of different legislation with respect to them. (6 R. C. L., Sec. 374.) Or, as well stated in State ex rel. Richards v. Hammer, 42 N. J. L. 435, 'The true principle requires something more than a mere designation by such characteristics as will serve to classify, for

the characteristics which thus serve as a basis of classification must be of such a nature as to mark the objects so designated as peculiarly requiring exclusive legislation. There must be substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation.' That principle is fully sustained by the decision of the Supreme Court of the United States (Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679), where the decisions are cited and reviewed."

No reason why sidewalks constructed of asphalt or other hard and incombustible material are not as liable to deteriorate or crumble within five years as one laid of cement or concrete has been pointed out to us and we do not conceive any, and imperfections in one kind would be as dangerous to the public as another. This ordinance is not an attempt to regulate a vocation as such and therefore does not pretend that the vocation is one so connected with the health, safety and general welfare of the public as requires restriction and regulation. A cement contractor is not prevented under its provisions, without a license. from mixing and laying cement and concrete either on walks or for other purposes on private property or any other place except on sidewalks on the streets.

There is still another reason why this ordinance is void. It interferes with the free right to contract. The statutes and the other ordinances of the City of Sheridan require the property owner to either construct or pay the cost of the construction or repair of the sidewalks adjoining his property and the evidence shows that the city authorities required him to do so. This ordinance by express terms forbids the contracting by or with any one who has not procured the license provided by the ordinance and no license could be issued except to those who could furnish the bond. Thus

the property owner was required to stand the expense of construction and repair while he was prevented from hiring to do the work the one who, in his judgment, was perhaps the most competent to do good and lasting work. (12 C. J. 949; Ex parte Drexel, 147 Cal. 736, 82 Pac. 429, 2 L. R. A. (N. S.) 588, 3 Ann. Cas. 878; Vitrified Brick and Tile Co. v. Perry, 69 Kan. 297, 76 Pac. 848, 66 L. R. A. 185, 1 Ann. Cas. 936, 937.) In the last above cited case the court said:

"The right to follow any lawful vocation and to make contracts is as completely within the protection of the constitution as the right to hold property free from unwarranted seizure, or the liberty to go when and where one will. One of the ways of obtaining property is by contract. The right, therefore, to contract cannot be infringed by the Legislature without violating the letter and spirit of the constitution. Every citizen is protected in his right to work where and for whom he will."

Counsel for plaintiff in error complains of that portion of the judgment of the court below which taxes costs against the relator and quotes Section 4647 of Wyo. Comp. Stats. 1910, which provides that in other actions than those specifically mentioned in the preceding section the costs may be equitably taxed in the discretion of the court. Counsel must have overlooked Section 5068 which is contained in Chapter 324 under the title "Mandamus," and reads as follows: "If judgment be given for the defendant, all costs shall be adjudged against the relator." This is a mandatory provision as to costs in mandamus cases and the court having found the ordinance void there could be no right to the writ or the relief prayed for and the judgment had to be for the defendant. Under these conditions and this statute the court had no discretion to tax the costs except against the relator. For the foregoing reasons the findings and judgment of the lower court must be affirmed. *Affirmed.*

POTTER, C. J., and BEARD, J., concur.