[No. 32091.   Department One.   November 13, 1952.]

FRED CARY, *Respondent*, v. THE CITY OF BELLINGHAM *et al.*, *Appellants.*[1]

*Joseph T. Pemberton*, for appellants.

*Walthew, Gershon, Oseran & Warner*, for respondent.

WEAVER, J.—October 4, 1951, the city of Bellingham adopted ordinance number 6784.

The ordinance, among other things, required that all employees within the city of Bellingham secure a yearly license. It levied a tax, based upon one-tenth of one per cent of gross income, revenues, receipts, and commissions, on all

[1] Reported in 250 P. (2d) 114.

persons receiving compensation for services performed within the city.

November 2, 1951, the plaintiff commenced this action against the city, alleging that he was "a resident and wage earner in the city of Bellingham," and that ordinance number 6784 was unconstitutional for various reasons set forth. The prayer of the complaint recited:

"(2) That the defendants . . . be required to show cause . . . why a temporary injunction should not issue against defendants . . . from enforcing, as against this plaintiff and all others similarly situated, the said ordinance No. 6784 . . .

"(3) That upon the trial of the merits of this cause, a permanent injunction issue against said defendants . . . restraining them from enforcing, as against plaintiff and others similarly situated, said ordinance, or any portion thereof."

The same day an order was entered directing the defendant city to show cause on November 16, 1951, why a *temporary* injunction should not issue enjoining defendant from enforcing the ordinance during the pendency of the action.

On November 30, 1951, the city filed a general demurrer. Although the record does not disclose it, the return day upon the show cause order for a temporary injunction was apparently continued until November 30, 1951, when the show cause order and the demurrer were argued and submitted to the court.

Upon that day, the following took place:

"Mr. Oseran: [for plaintiff] If Your Honor please, in this action the hearing was originally scheduled on an order to show cause issued at the instance of the plaintiff, an order to show cause directed to the City and other defendant why a *temporary* injunction should not issue restraining the enforcement as against the plaintiff of an ordinance of the City of Bellingham. Subsequent to the order to show cause a demurrer was interposed by the defendants to the complaint and to the order to show cause. Counsel for the City and I for the plaintiff both agree that the demurrer is the matter that should be heard and that will probably resolve

the entire issue. That being the case, I assume you should argue first.

"Mr. Pemberton: [for the city] That's right. . . ."

Having taken the matter under advisement, the trial court filed its memorandum opinion December 5, 1951.

On December 17, 1951, the trial court entered a "Judgment Overruling Demurrer and Granting Permanent Injunction." Thus, the court entered judgment against defendants, *permanently* enjoining the enforcement of the ordinance against any persons receiving compensation in "salary, wages, commissions, bonuses, incentive payments and/or other forms of compensation" within defendant city. Although service of the judgment was accepted by counsel for the city, it was not approved as to form.

By its first assignment of error, appellant urges that the trial court erred in overruling the demurrer to respondent's complaint. Although respondent has pleaded five separate reasons why the ordinance is claimed to be unconstitutional, it is not necessary, at this stage of the proceeding, that we discuss and analyze all of them. Our province is to test the sufficiency of the complaint. If it states a cause of action upon any theory, the demurrer must be overruled.

The complaint alleges:

"The City of Bellingham has no power to license or refuse to license plaintiff for working for a living and earning wages within the said city, and having no power to license at all, has no power to license for revenue."

Section 10 of the ordinance provides:

". . . no person *whether subject to the payment of a tax or not*, shall engage in any business or activity in the City of Bellingham for which a license fee or tax is imposed by this ordinance without having first obtained and being the holder of a valid subsisting license so to do, . . . and without paying the license fee or tax imposed by this ordinance, and in addition the sum of One Dollar ($1.00), as a license fee which shall accompany the application for the license."

The persons subject to the license fee and tax are de-

fined in section 3 of the ordinance. In so far as respondent is concerned as a "wage earner," it provides:

"On and after the effective date of this ordinance, there is hereby levied . . . [a tax] . . . (f) Upon every person engaging within the City in any activity, receiving compensation in salary, wages, commissions, bonuses, incentive payments and/or other forms of compensation . . . the amount of the tax on account of such activities shall be equal to the gross income of such person so received, multiplied by the rate of one-tenth of one per cent; . . ."

The sole purpose of the ordinance is found in section 1.

"The provisions of this ordinance shall be deemed an exercise of the power of the City of Bellingham to license for revenue."

The appellant in its brief states that:

". . . the only question involved is whether the activity of working for salaries or wages may be reached by the city's excise tax."

In determining that the classification was not arbitrary when a business and occupation tax covered those engaged in a business activity and excluded those performing the same activity as employees, we have recognized an inherent, fundamental difference between one engaged in business for himself and one who is simply employed by others.

In *State ex rel. Stiner v. Yelle*, 174 Wash. 402, 25 P. (2d) 91, we said:

"It needs no argument to demonstrate that the wage earner is properly excluded, and that upon no theory can he be classed with those engaged in business." (p. 411.)

In *Supply Laundry Co. v. Jenner*, 178 Wash. 72, 34 P. (2d) 363, we approved the distinction pointed out in the *Stiner* case and said:

"The latter [employees] have no voice in the business itself nor any share in its returns; their compensation is fixed and they have no independent call upon the state or municipality for the protection of a privately owned business, as that term is ordinarily understood." (p. 77.)

■ The license required by section 10 of the ordinance is not a license tax in the sense of a regulatory charge imposed under the police power. It is, in effect, a license based upon the *assumed* power of the municipality to control the right to work for wages. The municipality has no such power and hence no right to levy an excise tax upon such right. In *Jensen v. Henneford,* 185 Wash. 209, 53 P. (2d) 607, we said:

"When a tax is, in truth, levied for the exercise of a *substantive privilege* granted or permitted by the state, the tax may be considered as an excise tax and sustained as such." (p. 218.) (Italics ours.)

In *Power Inc. v. Huntley,* 39 Wn. (2d) 191, 235 P. (2d) 173, we said:

"We recognize the right to levy an excise tax on the privilege of doing business or exercising corporate franchises and to base that tax on income; but the tax must be, 'in truth, levied for the exercise of a substantive privilege granted or permitted by the state.'" (p. 197.)

■ The right to earn a living by working for wages is not a "substantive privilege granted or permitted by the state." It is, as described by the supreme court of the state of Wyoming:

"... one of those inalienable rights covered by the statements in the Declaration of Independence and secured to all those living under our form of government by the liberty, property, and happiness clauses of the national and state constitutions." *State v. Sheridan,* 25 Wyo. 347, 357, 170 Pac. 1, 1 A. L. R. 955. See also *In re Aubrey,* 36 Wash. 308, 78 Pac. 900, 104 Am. St. 952, 1 Ann. Cas. 927.

The complaint stated a cause of action and the trial court did not err when it overruled appellant's demurrer to it.

By its second and third assignments of error, appellant contends that the trial court erred in:

"2. Issuing a judgment and permanent injunction without taking of any evidence and without trial, although the Complaint of the plaintiff prayed for a permanent injunction 'upon the trial of the merits of this cause.'

"3. In granting a judgment before the appellant had filed an Answer in the Cause."

■ Appellant's second and third assignments of error are well taken. No issue of fact was framed; no findings of fact and conclusions of law were filed; no order of default had been entered. Under our practice:

"When a demurrer or motion has been determined, the party to whom the decision is adverse shall have three days in which to plead, unless a different time is fixed by special rule or order." Superior Court Rule 3 (2), 34A Wn. (2d) 110.

Orderly procedure demands that litigants have an opportunity to present defenses before judgment is entered against them. It is possible that defendant has defenses which would affect plaintiff's right to prevail. The effect of overruling the demurrer was to announce that plaintiff, in absence of defenses, would be entitled to relief if he proved the allegations of his complaint. It determined no issue of fact nor did it anticipate all possible defenses.

The colloquy of counsel, in the opening arguments in the trial court, could refer only to the matters then before the court, namely, the demurrer and the order to show cause why a temporary injunction should not be granted *pendente lite*. If there is a stipulation of counsel to the contrary, it does not appear in the record. Superior Court Rule 10, 34A Wn. (2d) 114.

That portion of the order entered December 14, 1951, purporting to enter judgment on the merits is modified to make the injunction temporary *pendente lite*, and the cause remanded so that defendant may, within the time permitted by the rules of court, file its answer to plaintiff's complaint.

MALLERY, GRADY, HAMLEY, and DONWORTH, JJ., concur.