**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| GREATER SEATTLE CHAMBER OF COMMERCE, d.b.a. SEATTLE METROPOLITAN CHAMBER OF COMMERCE, | ) ) ) ) | No. 82830-4-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| CITY OF SEATTLE, | ) ) | PUBLISHED OPINION |
| Respondent. | ) ) ) | |

MANN, J. — In response to a homelessness emergency, and loss of revenue due to the COVID-19 pandemic, in July 2020 the City of Seattle (City) adopted a payroll expense tax on certain entities engaged in doing business in Seattle. The Greater Seattle Chamber of Commerce (Chamber) sued, seeking declaratory judgment to invalidate the payroll expense tax. The King County Superior Court dismissed the Chamber's case on summary judgment. The Chamber appeals arguing that the payroll expense tax is an unconstitutional tax of employee wages under Cary v. Bellingham, 41 Wn.2d 468, 250 P.2d 114 (1952). We disagree and affirm.

No. 82830-4-I/2

FACTS

On July 6, 2020, the City adopted Ordinance 126108 imposing a payroll expense tax on certain entities engaging in business in Seattle. The ordinance was adopted in response to a November 2015 proclamation of civil emergency related to homelessness, and a projected severe revenue impact related to the 2020 COVID-19 pandemic. The City also adopted Ordinance 126109 establishing a spending plan for the proceeds generated by the payroll expense tax. The City's Department of Finance and Administrative Services adopted Rule 5-980 detailing the structure of the payroll expense tax. Seattle Business Tax Rule (SBTR) 5-980 (June 1, 2021). The payroll expense tax became effective January 1, 2021. The City delayed the date of the first payment of the payroll expense tax until January 31, 2022.

The payroll expense tax applies to entities "engaging in business within Seattle." SMC 5.38.030(A).[1] The tax is measured using a business's "payroll expense," which is defined as "compensation paid in Seattle to employees." SMC 5.38.030. Compensation includes wages, commissions, salaries, stock, grants, gifts, bonuses, and stipends. SMC 5.38.020; SBTR 5-980. The tax applies to businesses with a payroll expense of more than $7 million in the prior calendar year. SMC 5.38.040(A). Compensation is considered "paid in Seattle" if the employee works more than 50 percent of the time in Seattle. SMC 5.38.025(C). If the employee does not work in any city more than 50 percent of the time, the employee's compensation is treated as though it was "paid in Seattle" "if the employee resides in Seattle." SMC 5.38.025(C)(3).

---

[1] The Seattle Municipal Code defines "engaging in business" broadly to include "commencing, conducting, or continuing in business, or continuing in business." SMC 5.30.030(B)(1).

-2-

The payroll expense tax imposes a tiered rate structure with three levels that increase as a business's payroll expense in Seattle increases. SMC 5.38.030(B). The tax applies to the payroll expense of employees with annual compensation of $150,000 or more. The tax is levied on the business entity and employers "may not make any deductions from employees' compensation to pay" for this tax. SMC 5.38.030.

The Chamber, on behalf of its members, sued the City in King County Superior Court seeking a declaration that the tax is illegal, invalid, and unconstitutional under Cary. After considering cross motions for summary judgment, the trial court granted the City's motion and dismissed.

The Chamber appeals.

ANALYSIS

This court reviews a grant of summary judgment de novo, engaging in the same inquiry as the trial court. Ruvalcaba v. Kwang Ho Baek, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c); Ruvalcaba, 175 Wn.2d at 6 (quoting Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003)).

A. Cary v. City of Bellingham

The Chamber's primary argument is that Cary controls, and the City's payroll expense tax is an illegal tax on the right to work for wages. We disagree.

In Cary, the City of Bellingham adopted an ordinance requiring all employees within the city to secure a yearly license. The City levied a tax based on one-tenth of one percent of gross income, revenues, receipts, and commissions on all persons

receiving compensation for services performed within the city. <u>Cary</u>, 41 Wn.2d at 468-69. The tax was "based upon the assumed power of the municipality to control the right to work for wages." <u>Cary</u>, 41 Wn.2d at 472.

Our Supreme Court held, "the municipality ha[d] no such power and hence no right to levy an excise tax upon such right." The court found that "the right to earn a living by working for wages is not a 'substantive privilege granted or permitted by the state.'" <u>Cary</u>, 41 Wn.2d at 472 (quoting <u>Power, Inc. v. Huntley</u>, 39 Wn.2d 191, 197, 235 P.2d 173 (1951)). Thus, because working for wages is a right, not a substantive privilege, the municipality lacked the authority levy the tax and the ordinance was unconstitutional.

In reaching its holding, the court noted the "inherent, fundamental difference between one engaged in business . . . and one who is simply employed by others." <u>Cary</u>, 41 Wn.2d at 471. The court stated, "[t]he wage-earner is properly excluded and . . . upon no theory can he be classed with those engaged in business." <u>Cary</u>, 41 Wn.2d at 471 (citing <u>State ex rel. Stiner v. Yelle</u>, 174 Wash. 402, 411, 25 P.2d 91 (1933)). The court continued to articulate the contours of a true excise tax levied on business:

> When a tax is, in truth, levied for the exercise of a <u>substantive privilege</u> granted or permitted by the state, the tax may be considered as an excise tax and sustained as such.

> We recognize the right to levy an excise tax on the privilege of doing business or exercising corporate franchises and to base that tax on income; but the tax must be, in truth, levied for the exercise of a substantive privilege granted or permitted by the state.

> The right to earn a living by working for wages is not a substantive privilege granted or permitted by the state.

No. 82830-4-I/5

Cary, 41 Wn.2d at 472 (citations omitted).

The City's payroll expense tax is readily distinguishable from the tax imposed in Cary. In Cary, the income based tax was levied on the employee, while the payroll tax here is levied on the business itself. The payroll expense tax applies to the privilege of engaging in business, not an employee's right to earn a living by working for wages. The taxation of a business's payroll expense and the taxation of an individual employee's earnings are not the same taxable incident. Again, there is a fundamental difference between one engaged in business and one who is simply employed by others. Cary, 41 Wn.2d at 471. A prohibition against taxing one party in a relationship does not prohibit a tax on the other party. See Klickitat County v. Jenner, 15 Wn.2d 373, 382, 130 P.2d 880 (1942).

In Cary, the tax was unconstitutional because the right to work for wages was not a "substantive privilege granted or permitted by the state." Instead, the right to work for wages was an "inalienable right" that could not be taxed. Cary, 41 Wn.2d at 472 (quoting State v. City of Sheridan, 25 Wyo. 347, 357, 170 Pac. 1 (1918)). But engaging in business is a privilege granted or permitted by the City and therefore open to taxation. Lakehaven Water & Sewer Dist. v. City of Fed. Way, 195 Wn.2d 742, 753-54, 466 P.3d 213 (2020). Because the payroll tax is levied on the business, it is a valid exercise of the City's taxing authority. Cary does not support the Chamber's position.

B. True Incident of the Payroll Expense Tax

The Chamber next argues that simply calling the tax a tax on "engaging in business," does not change the true incident of the tax: paying employees' compensation. Again, we disagree.

-5-

This court reviews questions of constitutional and statutory interpretation de novo. Sheehan v. Cent. Puget Sound Reg'l Transit Auth., 155 Wn.2d 790, 796-97, 123 P.3d 88 (2005). The court's objective is to "ascertain and carry out the legislature's intent by giving effect to the ordinance's plain meaning." Watson v. City of Seattle, 189 Wn.2d 149, 158, 401 P.3d 1 (2017). The City's ordinance is presumed to be valid and constitutional, and the challenging party has the burden of showing unconstitutionality. Watson, 189 Wn.2d at 158.

Regardless of the label a legislative body assigns a tax, courts must determine the nature and effect—the "incident"—of the tax. Power, Inc., 39 Wn.2d at 196. "The nature of a tax is revealed by examining the subject matter of the tax and the incidents of the tax, 'i.e., the manner in which it is assessed and the measure of the tax.'" Harbour Vill. Apartments v. City of Mukilteo, 139 Wn.2d 604, 607 n.1, 989 P.2d 542 (1999) (quoting Weaver v. Prince George's County, 281 Md. 349, 356, 379 A.2d 399 (1977)). "Engaging in business" and "doing business" are recognized privileges that may be taxed. However, Washington courts also hold that merely labeling a tax as a tax on the privilege of engaging in business does not make it one. Power, Inc., 39 Wn.2d at 196. The "character of a tax [must be] determined by its incidents, not by its name." Power, Inc., 39 Wn.2d at 196-97.

All taxes fall into one of three categories: property, income, or excise. Watson, 189 Wn.2d at 167-68; Lakehaven, 195 Wn.2d at 754. A tax statute has three basic elements: incident, measure, and rate. As the court in Ford Motor Co. v. City of Seattle, Exec. Servs. Dep't, 160 Wn.2d 32, 39, 156 P.3d 185 (2007) explained:

> First, there must be an incident that triggers the tax. The "taxable incident" is the "activity that the legislature has designated as taxable."

No. 82830-4-I/7

> Second, there must be a base that represents the value of the taxable incident. This is known as the "tax measure." Third, there must be a "tax rate," which, when multiplied by the tax measure, determines "the amount of tax due."

(citing 1B KELLY KUNSCH ET AL., WASHINGTON PRACTICE: METHODS OF PRACTICE § 72.3, at 449 (1997)). "[E]xcise taxes are levied on an activity—such as the sale, consumption, or manufacture of goods—or upon a privilege or license granted by the state." Kunath v. City of Seattle, 10 Wn. App. 2d 205, 213-14, 444 P.3d 1235 (2019). In Sheehan, the court explained:

> [E]xcise taxes require two conditions: [f]irst, excise taxes are imposed upon a voluntary act of the taxpayer, which affords the taxpayer the benefits of the occupation, business or activity that triggers the taxable event. Second, excise taxes are directly imposed based upon the extent to which the taxpayer enjoys the taxable privilege.

155 Wn.2d at 799-800.

The Chamber argues that the true incident of the payroll expense tax is paying employees' compensation and the tax is measured by "compensation paid in Seattle to employees" and not the business activity of the taxpayer. The City argues that the incident of the payroll expense tax is engaging in business in the City and the measure is the payroll expense of the business. We agree with the City.

In Power, Inc., the court found a tax with the income of the business as the measure of the tax a property tax rather than an excise tax. It distinguished the corporate income tax from the business and occupation (B&O) tax (a true excise tax) because the corporation's net income did not reflect the extent of its business activity in the state. Power, Inc., 39 Wn.2d at 196-97. Simply, it was a general tax on the business's income, with no specificity to business activities within the city of Seattle.

-7-

The City's payroll expense tax is distinguishable. In Power, Inc., the tax was levied on the corporation based on net income to the business and had no reference to income generated from business in the city. On the other hand, the payroll expense tax is based on the business's payroll expenses from employees who specifically perform work within Seattle. The tax is specific to business activity in the city because it uses allocation measures to only tax payroll of employees who engage in business in Seattle. Engaging in business is a privilege, and employing workers in Seattle is a facet of that privilege.

The Chamber continues by arguing that the measure of the payroll expense tax reveals its true incident, "paying employees compensation," because it is not connected to a taxpayer's business activity.

Washington courts have endorsed the use of payroll to measure business activity. In City of Seattle v. KMS Fin. Servs., Inc., 12 Wn. App. 2d 491, 505-506, 459 P.3d 359 (2020), we discussed the use of payroll to measure income-generating activity within the city. To properly apportion the B&O tax, cities use a two-factor apportionment formula based on service income and payroll. KMS, 12 Wn. App. 2d at 505. The payroll factor compares the compensation paid to individuals and employees "in the city" to compensation paid to individuals "paid everywhere." KMS, 12 Wn. App. 2d at 505. In Avanade, Inc. v. City of Seattle, 151 Wn. App. 290, 299-300, 211 P.3d 476 (2009), the court noted that apportionment based on payroll costs is a constitutional method for calculating B&O tax liability and is recognized by the United States Supreme

No. 82830-4-I/9

Court.  The Chamber fails to support its position that payroll cannot be used to measure business activity.[2]

The Chamber also claims that the allowance of an alternative method of evaluating compensation shows that the payroll expense tax is not "measured on the extent of the taxpayer's business activity in Seattle, but on compensation paid to individual employees who may work in Seattle."  But the payroll tax does this as a means for accurately evaluating the extent that a corporation engages in business in the city.  The ordinance provides:

> If payroll expense as defined in Section 5.38.020 does not fairly represent the extent of the compensation paid by the taxpayer to its employees that is attributable to work performed or services rendered in Seattle, the taxpayer may petition the Director for, or the Director may require the employment of another method to effectuate an equitable allocation and apportionment.

SMC 5.38.050(B).  Work performed and services rendered are facets of engaging in business in Seattle.  The ability to use a different apportionment method reinforces the ordinance's goal of accurately gauging the extent a taxpayer is engaging in business specifically within Seattle.

---

[2] The Chamber offers several examples of how the tax will unjustly include employees who do not work in Seattle to help demonstrate that the measure of the payroll tax is not connected to a taxpayer's business activity in the city.  But the payroll tax employs multiple methods for determining compensation in the city.  SMC 5.38.025(B) provides an hours worked method where the evaluation of amount of compensation paid in Seattle to employees must be 100 percent for those who work exclusively within Seattle.  And if the employee works partially in Seattle, includes the portion of the employee's annual compensation which bears the total number of the employee's hours worked within Seattle.  Alternatively, SMC 5.38.025(C) provides a "primarily assigned method" where compensation is paid in Seattle to an employee if the employee is primarily assigned within Seattle, the employee performs 50 percent or more of their services for the tax period in Seattle, or the employee is not primarily assigned, does not perform 50 percent or more of their service in any city, and the employee resides in Seattle.  The Chamber's examples are misleading at best.

No. 82830-4-I/10

C. Authority for the Payroll Expense Tax

The Chamber finally argues that the superior court erroneously concluded that the City had extensive taxing authority, and in relying on a 1951 Attorney General Opinion (AGO). We disagree.

Article XI, section 12 of the Washington Constitution provides that "[f]or all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes." These local taxes must serve local purposes. City of Wenatchee v. Chelan County. Pub. Util. Dist. No. 1, 181 Wn. App. 326, 337, 325 P.3d 419 (2014).

The legislature authorized the City to levy excise taxes under three statutes. Under RCW 35.22.280(32), first-class cities may "grant licenses for any lawful purpose, and to fix by ordinance the amount to be paid therefor." The Watson court held: "[a]bsent restriction, RCW 35.22.280(32) grants Seattle broad authority to tax [businesses] for the privilege of doing business within city limits." 189 Wn.2d at 170. Under RCW 35A.82.020, code cities may "impose excises for regulation or revenue in regard to all places and kinds of business, production, commerce, entertainment, exhibition, and upon all occupations, trades and professions and any other lawful activity." Seattle is a first-class city that possesses the same tax authority granted to code cities. See RCW 35.22.570. Finally, RCW 35A.11.020 confers "all powers of taxation for local purposes" subject only to constitutional and statutory constraints.

The Chamber also takes issue with the trial court's reliance on the 1951 AGO. 1951 Op. Att'y Gen. No 469. The 1951 AGO answered the question: "[M]ay a city impose a tax for revenue purposes based on a flat percentage of the payrolls of persons employed within the city?" 1951 Op. Att'y Gen. No 469. While recognizing that an

-10-

No. 82830-4-I/11

objection might exist where the tax was unreasonable and unrelated to a privilege enjoyed, the attorney general concluded that the reasonableness is an issue of the legislature, and a court will only invalidate a tax if there is clear abuse of the power. 1951 Op. Att'y Gen. No. 469, at 2 (citing Pac. Tel. & Tel. Co. v. City of Seattle, 172 Wash. 649, 21 P.2d 721 (1933), aff'd, 291 U.S. 300, 54 S. Ct. 383, 78 L. Ed. 810 (1934)). The opinion explained further that the Supreme Court of the United States discharged all objections to taxes measured by payrolls. 1951 Op. Att'y Gen. No. 469, at 2; see generally Carmichael v. Southern Coal Co., 301 U.S. 495, 57 S. Ct. 868, 81 L. Ed. 1245 (1937); Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548, 57 S. Ct. 883, 81 L. Ed. 1279 (1937). The 1951 AGO concluded, "[i]t is our opinion that a city may, under its power to license for revenue purposes, impose a tax upon those employers within its borders measured by its payroll for persons employed within the city." 1951 Op. Att'y Gen. No. 469, at 2.

The Chamber contends that Cary and Power, Inc. soundly rejected the 1951 AGO. We disagree.

The tax in Cary was levied on employees measured by their individual income. The case did not concern imposing an excise tax on employers measured by payroll expenses. Similarly, Power, Inc. does not reject the AGO, but follows it. In Power, Inc., the court invalidated a tax on net income as an illegal property tax. 39 Wn.2d at 195. In making this determination, the court stated, "[w]e r[e]cognize the right to levy an excise tax on the privilege of doing business or exercising corporate franchises and to base that tax on income; but the tax must be, 'in truth, levied for the exercise of a substantive privilege granted or permitted by the state.'" Power, Inc., 39 Wn.2d at 197; Jensen v.

-11-

No. 82830-4-I/12

Henneford, 185 Wash. 209, 218, 53 P.2d 607 (1936). The court determined that the "tax is levied because the corporation has net income, not because it does any business in the state." Power, Inc., 39 Wn.2d at 196-97. The Power, Inc. court recognized the ability to measure a tax on income, but it found that the tax in dispute was not levied "in truth" and was simply a property tax masquerading as an excise tax. The court did not specifically analyze a payroll expense tax levied on a business allocated based on the payroll expenses specific to employees engaging in business in Seattle. Opinions of the attorney general construing the state constitution or interpreting a statute are generally entitled to great weight by the courts. Five Corners Family Farmers v. State, 173 Wn.2d 296, 308, 268 P.3d 892 (2011). The 1951 AGO is compelling authority.

We conclude that the City's payroll expense tax is an excise tax on businesses imposed under powers vested in the City by the state legislature and the state constitution. Engaging in business is a substantial privilege on which the City may properly levy taxes, and the use of a business's payroll expense is an appropriate measure of that taxable incident. Unlike Cary, the City's payroll expense tax is not a tax on employee income or the right to work for wages. Summary judgment in favor of the City was appropriate.

Affirmed.

_____
Mann, J.

WE CONCUR:

_____                    _____
Coburn, J.

-12-