[No. 16928.   Department One.   April 8, 1922.]

JOHN NIPGES, *Appellant*, v. EDITH M. THORNTON, *Respondent.*[1]

TAXATION (5)—CONSTITUTIONAL RESTRICTIONS—LEVIES ON COUNTIES—POLL TAX. Rem. Comp. Stat., § 11246, levying a poll tax, one-fifth of which is retained by the counties collecting the same and goes to their current expense funds, does not offend against Const., art. 11, § 12, providing that the legislature shall have no power to impose taxes upon counties, cities, etc.; since the one-fifth part in question is a proper allowance for reimbursing the counties for the expense of collecting the tax.

CONSTITUTIONAL LAW (3)—GENERAL RULES OF CONSTRUCTION. A statute will not be held void unless there can be no reasonable doubt that it offends against the constitution.

STATUTES (9)—PARTIAL INVALIDITY. Under Rem. Comp. Stat., § 11251, providing that the invalidity of any part of the poll tax law shall not invalidate the balance of the act, a taxpayer cannot complain of the illegality of allowing the counties to retain one-fifth of the tax, since otherwise it would all go to the state.

TAXATION (5)—CONSTITUTIONAL RESTRICTIONS—STATEMENT OF OBJECT—POLL TAXES. The poll tax law, Rem. Comp. Stat., §§ 11242 to 11246, does not offend against Const., art. 7, § 5, providing that every law imposing a tax shall state distinctly the object of the same, by reason of the proviso to § 11246 making it the duty of the legisla-

[1]Reported in 206 Pac. 17.

ture to make further appropriations, if the sums collected for poll taxes shall be insufficient to pay the principal and interest on the soldiers' bonus bonds; since all the moneys collected are deposited in the state general fund to be used freely without reference to future contingencies.

SAME (6)—CONSTITUTIONAL RESTRICTIONS. The poll tax law, Rem. Comp Stat., §§ 11242-11251, does not offend against Const., art. 7, §§ 1 and 2, requiring all property to be taxed according to its value at a uniform and equal rate; since there is no prohibition against poll or capitation taxes, and sources of revenue other than property taxes are recognized.

Appeal from a judgment of the superior court for Whatcom county, Brown, J., entered June 13, 1921, in favor of the defendant, upon sustaining a demurrer to the complaint, dismissing an action for an injunction. Affirmed.

*Bixby & Nightingale,* for appellant.

*The Attorney General* and *Loomis Baldrey,* for respondent.

*A. O. Colburn, amicus curiae.*

TOLMAN, J.—This action is a direct attack upon chapter 174 of the Laws of 1921, commonly known as the "Poll Tax Law" [Rem. Comp. Stat., § 11242 *et seq.*] upon the ground that it is unconstitutional. From a judgment upholding the act, this appeal is prosecuted.

The act in question, among other things, provides for the collection of an annual tax of $5 from "All persons of this state, over twenty-one (21) years of age and under fifty (50) years of age, except idiots, insane persons, and persons supported at public expense," payable to the treasurer of the county where the taxpayer resides. It is further provided that each county assessor shall prepare a list of the names of all those in his county liable for the payment of the tax, to be certified by the county treasurer to the sheriff,

and it is made the duty of the sheriff to collect the tax by seizure and sale of property if necessary, and the treasurer and sheriff, in the name of the county, are empowered to invoke process in civil procedure to enforce collection. Section 5 of the act reads as follows:

"The various county treasurers shall on or before the first day of every month remit to the state treasurer four-fifths of all taxes collected under this act, and said taxes so remitted shall be deposited in the general fund and the county treasurers shall deposit the remaining one-fifth of said taxes collected in the current expense fund of their respective counties: *Provided,* That if the taxes collected under the provisions of section 8, chapter 1, Laws of the Extraordinary Session of the Legislature of 1920, shall prove insufficient to pay the interest and principal of the bonds issued under said act, then it shall be the duty of the Legislature to appropriate monies from the general fund to cover such deficiency in an amount not in excess of the monies transmitted to the general fund under this act." Laws of 1921, p. 676, § 5. [Rem. Comp. Stat., § 11246.]

Appellant's first contention is that the act violates § 12, of art. XI, of the state constitution, which reads:

"The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

in that one-fifth of the tax collected is retained by the counties and placed in their respective current expense funds, and hence, to that extent, it is a direct tax upon the individuals of the several counties for county purposes; and further, if any portion of the tax is illegal the whole must fall.

In approaching such a constitutional question the well-established rule that the courts will not declare an act of the legislature void unless it so clearly offends against the constitution that there can be no reasonable doubt upon the subject, must always be kept clearly in mind. Does this act so offend against the constitutional provision hereinbefore quoted? We are firmly of the opinion that it does not. It does not appear clearly, or at all, that the tax is imposed for county purposes, in whole or in part. As to the four-fifths to be paid into the state treasury, there is, of course, no question. As to the remaining one-fifth to be retained by the counties, we see nothing wrong or objectionable in the state, though not obliged to do so, thereby and to that extent reimbursing the counties for the cost of collecting the tax. No doubt the legislature recognized the fact that the counties have their own financial problems, and the burden which this act places upon them would greatly increase their current expenses, and therefore considered it but fair in opening up this new source of revenue to the state, while using the machinery of the counties for its collection, to make such an allowance from the fund realized as would, as nearly as could be anticipated, cover the cost. The requirement that the money thus retained shall be placed in the current expense fund, from which must be paid the county's expenses in collecting the tax, as well as its other current expenses, such as salaries, court costs, and the like, is strong evidence of the legislative intent in this respect. We know of no constitutional provision or rule of public policy which forbids such a course.

But, in any event, should we hold this particular provision invalid, the result would be the same, for § 10 of the act provides,

"If any section, subdivision, sentence or clause of this act is for any reason held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this act." Laws of 1921, p. 678, § 10. [Rem. Comp. Stat., § 11251.]

If, therefore, the provision permitting the counties to retain one-fifth of the amount collected offends against the constitution, the result would be that the whole amount collected would go into the state treasury, and appellant and those similarly situated would be relieved of no part of the burden which the law places upon them.

Appellant's second contention is that the act offends against § 5, of art. VII, of the constitution, which reads:

"No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

And in his brief, counsel for appellant says:

"In the first instance, the money is to go in the general fund, where in the usual course of events, and but for said proviso, it would be used for the payment of salaries and other current expenses not otherwise specifically provided for. Were it limited to this, it might be sufficient under the holding of this court, on the rather broad supposition that it is for meeting the current expenses of the state. But under the proviso contained in said section, it seems manifest that none of the moneys so derived can be expended for any of the purposes provided by general laws for the expenditure of such general fund until it can be determined whether there will be sufficient funds provided by the so-called Veterans' Equalized Compensation Act to meet the interest and principal of the bonds issued pursuant thereto."

This concession renders it unnecessary to reason out the sufficiency of the provision for placing the money

collected in the general fund, to fully comply with the
requirement of the constitution, and leaves for discus-
sion only the proviso in § 5 of the act. A careful read-
ing of the proviso shows clearly that no part of the
money to be raised under this act is thereby set aside
or appropriated for the payment of principal or in-
terest upon the bonds specified; that the money, as it
is received, may be freely used as a component part
of the general fund without reference to future con-
tingencies, and at the most the proviso, if properly
enacted; and if binding upon future legislatures, only
requires that the amount received under this act shall
be taken as the measure or limit of what may at some
future time, upon the happening of the contingency
named, be appropriated from the general fund for the
purpose indicated. Clearly the object of imposing this
tax was to increase the revenue flowing into the gen-
eral fund, and thus facilitate the payment of those
demands which other laws make or may make payable
out of that fund.

Appellant's third and last contention is that the act
is violative of §§ 1 and 2, of art. VII, of the constitu-
tion. Section 1 refers exclusively to the taxation of
property, and provides that all property not exempt
shall be taxed in proportion to its value. It does not
in terms, nor by implication, forbid the raising of
money by a tax not imposed on property. In fact, it
expressly recognizes "other sources of revenue," with-
out defining them, and we see no reason why a poll
tax may not have been in the minds of the framers
when they used that expression. Section 2 likewise
relates exclusively to the taxation of property, and
provides for a uniform and equal rate of assessment
on all property, so that every person shall pay a tax
in proportion to the value of his property. Neither

this, nor any other section of the constitution, contains any prohibition against a poll tax, and as is said in *State v. Ide,* 35 Wash. 576, 77 Pac. 961, 102 Am. St. 914, 1 Ann. Cas. 634, 67 L. R. A. 280:

"The tax in question is not a tax on property, but it is nevertheless a tax, under any proper definition of that term. It is a poll, or capitation, tax, and is so denominated both in the statute and the ordinances. It is levied for a public purpose, and is clearly a revenue measure. But its assessment is not governed by the general revenue law, or, strictly speaking, by § 2 of art. 7 of the state constitution, which declares that the legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state according to its value in money.

"It is settled law that the power of taxation is a legislative power, and an incident of sovereignty, and when the people adopt a constitution and thereby create a department of government upon which they confer the power to make laws, the power of taxation is conferred as a part of such general power. And, unless its power of taxation is limited by constitutional provisions, the state, by virtue of its sovereignty, has the power to tax all persons and property within its jurisdiction. Cooley, Taxation (2d ed.), pp. 4-5; (3d ed.), pp. 7, 8, 9, and cases cited. See, also, Judson, Taxation, § 431. Several of the state constitutions provide for the imposition of poll taxes, but such taxes are, it seems, prohibited by the constitutions of Ohio and Maryland. See, 1 Desty, Taxation, p. 296.

"Our constitution does not expressly mention such taxation, and, as that instrument is not a grant of power, but a limitation of power inherent in the state, independent of that instrument, it follows that this tax must be declared valid, unless the legislature was indirectly and by necessary implication prohibited from authorizing it to be levied by some provision of the constitution."

See, also, *Thurston County v. Tenino Stone Quarries,* 44 Wash. 351, 87 Pac. 634; *Tekoa v. Reilly,* 47 Wash. 202, 91 Pac. 769, 13 L. R. A. (N. S.) 901.

As we have seen, our constitution does not, directly or indirectly, prohibit the imposition of a per capita tax, therefore the case of *State v. Ide, supra*, is absolutely controlling upon the point now under discussion, and also sustains our position upon the first question raised. Numerous authorities have been cited and discussed, but none from this court trench upon the doctrine laid down in the *Ide* case, and we deem it unnecessary to discuss those from other jurisdictions.

The judgment of the trial court is affirmed.

PARKER, C. J., FULLERTON, MITCHELL, and BRIDGES, JJ., concur.