[No. 25102. Department One. June 25, 1934.]

THE SUPPLY LAUNDRY COMPANY *et al., Appellants,* v. T. M. JENNER *et al., Respondents.*[1]

[1]Reported in 34 P. (2d) 363.

*John H. Dunbar,* for appellants.

*The Attorney General* and *R. G. Sharpe, Assistant,* for respondents.

*Roberts & Skeel, amici curiae.*

STEINERT, J.—This is an action to enjoin the enforcement of certain provisions of the occupation tax act passed at the extraordinary session of the legislature in 1933. The court sustained a demurrer to the complaint and entered a judgment of dismissal, from which this appeal was taken.

During the regular session of the legislature held in 1933, an act was passed initiating an occupation tax. Ch. 191, Laws of 1933, p. 869 (Rem. 1933 Sup., § 8326-1 *et seq.*). A suit to test the constitutionality of that act was instituted, resulting in a decision of this court which upheld the act. *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91.

The original act of 1933 contained a sectional provision imposing upon every person engaging or continuing, within this state, in the business of rendering, performing or selling services, professional or otherwise, a tax measured by the gross income of the business. That section, together with one relating to agri-

culture, was vetoed by the governor of the state. Subsequent to the decision in the *Stiner* case, the legislature, in extraordinary session, passed the amendatory act (Laws of 1933, Ex. Ses., p. 157, Rem. 1934 Sup., § 8326-2-a *et seq.)* involved in this action. Section 2-a (1) of the latter act, so far as it is material here, reads as follows:

"From and after the first day of January, 1934, and until the thirty-first day of July, 1935, there is hereby levied and there shall be collected from every person engaging or continuing within this state in the business of rendering or performing services, professional or otherwise, . . . an annual tax or excise for the privilege of engaging in such business; . . . for the purposes of this act a person engaged in a business or profession shall include all persons whose services are paid from public funds holding any public office or any public position or employment with the State of Washington or any political subdivision thereof, whose monthly salary exceeds $200.00 per month." Rem. 1934 Sup., § 8326-2a.

It will be observed that, by this act, the legislature restored, and extended in certain respects, one of the provisions of the former act which the governor had previously vetoed.

By § 2-a(2) of the amendatory act, it was provided that it should not apply to persons acting solely in the capacity of employee or servant who received a fixed wage or salary or a compensation determinable according to an agreed plan or formula, and who had no direct interest in the income or profits, or liability for expenses or losses, as such, resulting from the transaction of the business; nor to gross income derived from the lease or rental of real estate, but not excepting gross income derived from engaging in a hotel, warehouse or storage business, or from any business where-

in a mere license to use or enjoy real property is granted.

The appellants in this case are, respectively, a corporation engaged in the business of rendering services in the operation of a laundry, a public office-holder under a political subdivision of the state and whose salary exceeds the sum of two hundred dollars per month, a practicing attorney under the laws of, and within, the state of Washington, and an insurance agent doing business within the state.

The appellants' contention is that the classification made by the amendatory act, with reference to the persons taxed and those not taxed, is arbitrary and violative of the equal protection clauses of the state and Federal constitutions.

The substructure of this opinion is founded upon the recent case of *State ex rel. Stiner v. Yelle, supra.* That was an *En Banc* decision, in which was expressed a wide divergence of opinion. Although the present writer entertained and expressed a view dissentient with that of the majority upon the questions there presented, that decision is, nevertheless, now the law of this state. It was therein held that the occupation tax was an excise tax, and not a property tax, and that, therefore, the uniformity clause contained in the fourteenth amendment of our constitution (being now Art. VII, § 1) did not apply. With the nature of the tax thus definitely settled, the court invoked the principle that the legislature in such case had a very broad power, and that we, as a court, could not interfere with that power except for arbitrary action, clear abuse or constructive fraud appearing on the face of the act or from facts from which we may take judicial notice, quoting from *Brown-Forman Co. v. Kentucky,* 217 U. S..563, 30 S. Ct. 578, as follows:

" 'A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' "

To this may be added the following quotation from the same court:

"The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, . . .

" 'A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'

"It is not the function of this Court . . . to consider the propriety or justness of the tax, . . . Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great." *State Board v. Jackson*, 283 U. S. 527 (537-8), 51 S. Ct. 540, 73 A. L. R. 1464.

While we agree with the authorities cited by appellants to the effect that the classification adopted by the legislature may not be a palpably arbitrary one, but must rest upon some ground or difference having a fair and substantial relation to the object of the legislation, we can not, in the light of the *Stiner* case, accept appellants' statement that the classification made in the later act is, in fact, arbitrary and capricious. If the

classification made in the original act is not subject to that criticism, then that made by the act as now amended is less so, for it includes a large class of those whose absence elicited much of what was said in the dissenting opinion in that case.

Appellants urge that there is a discrimination between professional men who engage in business for themselves and those employed upon a salary; likewise, between those engaged in performing non-professional services in a proprietary business of their own, and those performing the same services as employees of others; also between those receiving salaries from public employment and those privately employed; further, between those engaged in renting office buildings and those operating hotels, warehouses and storage houses. They also contend that taxing an insurance agent is equivalent to double taxation of insurance premiums, and therefore unlawful.

The *Stiner* case stresses the distinction between the privilege of carrying on a business of a commercial nature and the privilege merely of being employed as a wage earner. Carrying the thought which underlay that distinction a step further, there is, in our opinion, equal ground and logical basis for a distinction between those who are privileged to conduct a business of their own, professional or otherwise, in the community, and those who are simply employed by others. The latter have no voice in the business itself nor any share in its returns; their compensation is fixed and they have no independent call upon the state or municipality for the protection of a privately owned business, as that term is ordinarily understood. So far as they are concerned, they are not principals in the business, but merely employees, and their pay, whatever it may amount to, is a part of the expense

of the business. Their omission has, in our opinion, a reasonable basis.

As to public employees, we think that there is sufficient reason for the distinction made, in that their salaries are, in a general way, certain during the period of the life of the act, whereas in private enterprises, at the present time, employment is precarious and revenue uncertain. The legislature may have differentiated between public and private employees because of the fact that private employees are, to a great extent, connected with business activities already taxed, while public employees are not, and that a tax upon private employees would therefore result in double taxation. Although not necessarily unlawful, nevertheless double taxation might well afford a logical ground for distinction. Whether the act applies to public officers whose salaries may not, under constitutional inhibitions, be increased or diminished during their terms of office, is not presented in this case, and we, therefore, are not passing on that question.

There is a clear distinction between the business of renting offices and operating hotels, warehouses and storage places. The income of the former is connected directly with the lease or rental of real estate, which is not within the spirit of the act; the latter are purely commercial businesses apart from the real estate itself, and contemplate a variety of services other than those connected with the rental of office space.

But it is not necessary for us to draw fine distinctions between classifications or illustrations which in some degree may shade into each other or which in some respects may have some common affinity. It is only necessary to determine whether, in the exercise

of a broad discretion, the legislature has abandoned reason and resorted to a wholly arbitrary selection.

"The line of division between the rational and the arbitrary in legislation is not to be drawn with an eye to remote possibilities. What the law looks for in establishing its standards is a probability or tendency of general validity. If this is attained, the formula will serve, though there are imperfections here and there. The exceptional, if it arises, may have its special rule." *Burnet v. Wells*, 289 U. S. 670 (681), 53 S. Ct. 761.

■ Appellants finally contend that to impose the tax upon insurance agents would result in double taxation, inasmuch as the agent receives his commission in the form of a percentage of the premiums, which are already taxed under Rem. Rev. Stat., § 7071. As already stated, double taxation is not necessarily unlawful. There is no constitutional inhibition against it in this state. While the legislature may take that element into consideration in differentiating between classes of individuals, it may also disregard it in cases where, in its judgment, other considerations outweigh it. While the activities of the insurance agent are related to that of the insurance company, those of the latter are much broader in scope than those of the former. An analogy may be found in the relation existing between wholesaler and retailer. The gross receipts of each may in the final analysis result from the sale of the same merchandise, yet this would furnish no logical ground for contending that there was double taxation.

The *Stiner* case in its concluding discussion suggested that the state was facing stark necessity and that the legislature had earnestly endeavored to meet a critical situation; that, while the law was, perhaps, not perfect, its imperfection was an inherent of all

tax laws; and that if, perchance, it worked injustice to some, it was only an emergency and temporary measure, devised and enjoined for the common good. While we, or at least some of the present members of this court, might disagree with the legislature on the wisdom or policy of some provisions of the act, and while some of us also may not entertain so despondent a view respecting the social and financial conditions of the state, we have, nevertheless, as a court, declared that, in such matters, we can not interfere with the power of the legislature unless we find its exercise to be arbitrary, capricious or constructively fraudulent. We do not so find it in the present instance.

The judgment is affirmed.

MITCHELL and MILLARD, JJ., concur.

MAIN, J. (specially concurring)—I am in accord with the majority opinion with the exception of the last paragraph thereof. There is nothing said in that paragraph which appears to me to be necessary to the decision of the case. While I did not agree with the majority opinion in the case of *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91, it has become the law of this state, and I am not now inclined to criticize it or prolong the discussion. With the exception of the last paragraph, I concur in the majority opinion in the case now before us.

TOLMAN, J. (concurring)—I am wholly in accord with the doctrine quoted from *Brown-Forman Co. v. Kentucky,* 217 U. S. 563, 30 S. Ct. 578, but personally, I can see no reasonable ground for a distinction between those in the professions who are employed on a salary basis and those who maintain offices and are remunerated by fees. Each alike receives the protection of the state, and the salaried man is as much

interested in the safeguarding and the success of the business which supports him as is the free lance in the general business conditions which enable him to earn a livelihood. However, it seems that this is a question upon which reasonable minds may differ, and I therefore yield my personal views in deference to the majority, and concur in the result which has been reached.