[No. 25759. *En Banc.* August 28, 1935.]

VANCOUVER OIL COMPANY, *Appellant,* v. H. H.
HENNEFORD *et al., Respondents.*[1]

MILLARD, C. J., MITCHELL, and HOLCOMB, JJ., dissent.

*McMullen & Snider,* for appellant.

*The Attorney General* and *R. G. Sharpe, Assistant,*
for respondents.

*L. B. daPonte* and *Robert S. Macfarlane, amici
curiae.*

MAIN, J.—This action was brought to restrain the
defendants from enforcing Title IV, chapter 180,
Laws of 1935, p. 726, Rem. 1935 Sup., § 8370-31 *et seq.,*
being that part of the chapter which covers the matter

[1]Reported in 49 P. (2d) 14.

of what is called the compensating tax. To the complaint a demurrer was interposed and sustained. The plaintiff elected to stand upon its complaint and refused to plead further. From the judgment dismissing the action, it appeals.

The facts, as stated in the complaint, which will present the questions here for determination, may be summarized as follows: The appellant, Vancouver Oil Company, is a corporation organized under the laws of this state, with its principal place of business in the city of Vancouver, Clark county. It is engaged in carrying on and conducting a gasoline, lubricating oil and fuel oil business in the city mentioned. In connection with such business, it uses automobile trucks and trailers. The respondents are the members of the tax commission of this state.

May 1, 1935, the appellant purchased a trailer from the Truck Equipment Company, a manufacturer of Portland, Oregon. The order was accepted at Portland, and the transaction consummated at that place. Thereafter, the property was delivered by the manufacturer to the appellant in the city of Vancouver, this state. Early in May, 1935, the appellant purchased from the Steel Tank & Pipe Company, a manufacturer in the city of Portland, Oregon, a large gasoline tank. This order was likewise accepted, and the purchase consummated in Portland. Thereafter, the property was delivered by the manufacturer to the appellant in this state. After the delivery of these two items of property, the appellant began using them in its business in this state. The respondents, as members of the tax commission, demanded that the appellant pay a tax upon the property, which is provided for in Title IV, chapter 180, Laws of 1935, p. 726, Rem. 1935 Sup., § 8370-31 *et seq.* Appellant refused to pay the tax, and the respondents threatened,

and prepared to take, legal proceedings to distrain and sell the property to satisfy the same.

Section 16 of chapter 180, p. 721, provides that, from and after the first day of May, 1935,

". . . there is hereby levied and there shall be collected a tax on each retail sale in this state equal to two per cent of the selling price." Rem. 1935 Sup., § 8370-16.

Section 31, which is the first section under the heading, Title IV, Compensating Tax, provides that there is

". . . hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state any article of tangible personal property purchased subsequent to April 30, 1935. Such tax shall be levied and collected in an amount equal to the purchase price paid by the taxpayer multiplied by the rate of 2%." Rem. 1935 Sup., § 8370-31.

Section 32 (Rem. 1935 Sup., § 8370-32) provides that the provisions of this title shall not apply (a) in respect to the use of any tangible personal property brought into this state by a non-resident thereof for his or her use or enjoyment while within the state; (b) in respect to the use of tangible personal property purchased other than at retail; (c) in respect to the use of any article of tangible personal property "the sale or use of which has already been subjected to a tax equal to or in excess of that imposed by this title" whether under the laws of this or some other state of the United States; and (d) in respect to the use of tangible personal property purchased during any calendar month, the total purchase price of which is less than twenty dollars.

It will be observed that § 16 is general in its language, and provides that there shall be collected "a tax on each retail sale" in this state equal to 2% of the selling price. Section 31 provides that there shall

be collected from every person in this state a tax or excise for the privilege "of using within this state any article of tangible personal property purchased subsequent to April 30, 1935." Subdivision (c) of § 32, which immediately follows, provides that any article of tangible personal property, the "sale or use of which has already been subjected to a tax equal to or in excess of that imposed by this title," shall not be subject to the tax upon the use.

The appellant makes three principal contentions: (a) That the so-called compensating tax is a direct property tax; (b) that the tax levied by Title IV is not uniform and is discriminatory, unfair and unjust; and (c) that Title IV violates the commerce clause of the Federal constitution.

With reference to the first contention, that is, that the tax is a property tax, little need be said, because this contention is covered by what is said in the recent case of *Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016, where it was held that the tax provided for in chapter 180 was an excise tax, and not a property tax.

With reference to the second contention, that of discrimination, it being an excise tax that we are dealing with, rather than a property tax, the constitutional provisions with reference to uniformity do not apply.

In *Hart Refineries v. Harmon,* 278 U. S. 499, 49 S. Ct. 188, it is said:

"But because the state legislature could have laid a tax upon the use of the commodity as well as upon its sale, it by no means follows that a failure to do so constituted a discrimination forbidden by the equal protection clause of the Fourteenth Amendment. That clause does not prohibit classification; and the power of the state to classify for purposes of taxation is of wide range and flexibility, provided that the classification rest upon a substantial difference so that all

persons similarly circumstanced will be treated alike. Statutes which tax one class of property while exempting another class necessarily result in imposing a greater burden upon the property taxed than would be the case if the omitted property were included. But such statutes do not create an inequality in the constitutional sense. Nor is the imposition of an excise tax upon one occupation or one activity from which other and different occupations or activities are exempt, a denial of equal protection. It is enough if all in the same class are included and treated alike. These propositions are so firmly established by repeated decisions of this Court that further discussion is unnecessary. [Citing authorities.]''

In the case now before us, we see no substantial basis for the claim of lack of uniformity and discrimination. The tax here involved was a tax upon the use of property after it had been brought into this state, and is the same in amount as the tax upon the sales of other like or similar property in this state.

With reference to the commerce clause of the Federal constitution, it is well settled, of course, that the state, through its legislature, has no power to restrict or regulate interstate commerce, or to impose a tax upon an article which would place a direct burden upon such commerce. A state tax, however, on merchandise brought into this state from another state, or upon its sales, whether in original packages or not, after it has reached its destination and is in a state of rest, is lawful, providing the tax does not work a discrimination against merchandise because of its origin in another state.

In *Sonneborn Bros. v. Cureton,* 262 U. S. 506, 43 S. Ct. 643, it is said:

''A state tax upon merchandise brought in from another state or upon its sales, whether in original packages or not, after it has reached its destination and is in a state of rest, is lawful only when the tax

is not discriminating in its incidence against the merchandise because of its origin in another state.''

In *Bowman v. Continental Oil Co.*, 256 U. S. 642, 41 S. Ct. 606, with reference to a state law which imposed an excise tax of two cents for each gallon of gasoline sold or used, it is said:

"With the excise tax as imposed upon the use of gasoline by plaintiff at its distributing stations, in the operation of its automobile tank wagons and otherwise, we have no difficulty. Manifestly, gasoline thus used has passed beyond interstate commerce, and the tax can be imposed upon its use, as well as upon the sale of the same commodity in domestic trade, without infringing plaintiff's commercial rights under the Federal Constitution.''

In the case of *Gregg Dyeing Co. v. Query*, 286 U. S. 472, 52 S. Ct. 631, 84 A. L. R. 831, the court had before it a statute of the state of South Carolina, which provided for a tax upon gasoline brought from another state, to be used and consumed in that state, and the law was sustained. Speaking with reference thereto, it was said:

"It imposes an exaction with respect to gasoline purchased in other states and brought into South Carolina and there placed by appellants in storage for future use within the state. By the terms of the Act, as construed by the state court and applied to these appellants, interstate commerce in relation to the subject of the tax has ended. The gasoline has come to rest within the State, having been placed in appellants' storage tanks and added to appellants' property kept for local purposes. In such circumstances the state has the authority 'to tax the products or their storage or sale.' *Texas Company v. Brown,* 258 U. S. 466, 478; *Sonneborn Bros. v. Cureton,* 262 U. S. 506, 519, 520; *Hart Refineries v. Harmon,* 278 U. S. 499, 501, 502. Not only may local sales of gasoline thus brought into the State be taxed, but its use as well. This was specifically determined in *Bowman*

*v. Continental Oil Co.,* 256 U. S. 642, 648, 649. · See *Hart Refineries v. Harmon, supra; Breece Lumber Co. v. Asplund,* 283 U. S. 788. There is an exception in the case of a tax directly on use in interstate commerce, as on use in interstate transportation. *Helson v. Kentucky,* 279 U. S. 245, 252; *Eastern Air Transport v. South Carolina Tax Comm.,* 285 U. S. 147. In view of these well-established principles, we find no ground for concluding that the State could not impose the tax with respect to the gasoline of appellants which was kept within the State for use in their local enterprises.''

Between that case and the case now before us, there does not appear to us to be any substantial distinction. The controlling, underlying principle is the same. There, the gasoline came to rest within the state and was being held for use or sale. Here, the property, which was purchased in Portland, Oregon, had been delivered to the appellant in this state for use in its business, and its interstate character had ceased.

The case of *Baldwin v. Seelig,* 294 U. S. 511, 55 S. Ct. 497, 79 Law Ed. 1032, much relied on by the appellant, is not controlling. There, the question was whether milk, purchased in another state and brought into the state of New York, had lost its interstate character by reason of the fact that it had been taken from the cans and bottled before being distributed to the customers, and it was held that the bottling did not take it out of interstate commerce. There, the milk had not come to rest within the state at the time of the bottling, while, here, the articles purchased in Portland, Oregon, came to rest and passed beyond interstate commerce, when they were delivered to the appellant in this state for its use.

The judgment will be affirmed.

TOLMAN, STEINERT, BEALS, GERAGHTY, and BLAKE, JJ., concur.

MITCHELL, J. (dissenting)—I dissent. With respect to the commerce clause of the Federal constitution, I understand the doctrine of the cases sustaining the legality of taxes on property that has come to a state of rest, purchased in another state, is that the situs of the property becomes fixed for the purpose of taxation, and that the tax is imposed alike upon property purchased in any and all states. This is made clear in *Sonneborn Bros. v. Cureton,* 262 U. S. 506, 43 S. Ct. 643, cited in the majority opinion. In that case, the tax was upon oil, purchased in another state, that had come to a state of rest in the warehouse of the owner who proposed to handle it in his business as a wholesale dealer. In deciding whether or not the tax was a regulation or burden on interstate commerce, it was said:

"The interstate transportation was at an end, and whether in the original packages or not, a state tax upon the oil as property or upon its sale in the State, if the state law levied the same tax on all oil or all sales of it, without regard to origin, would be neither a regulation nor a burden of the interstate commerce of which this oil had been the subject."

Or, as later stated in *Baldwin v. Seelig,* 294 U. S. 511, 55 S. Ct. 497, 79 Law Ed. 1032:

"A state tax upon merchandise brought in from another state, or upon its sales, whether in original packages or not, after it has reached its destination and is in a state of rest, is lawful only when the tax is not discriminating in its incidence against the merchandise because of its origin in another State." (Citing cases.)

The present case, however, is not that kind—the law here involved is plainly at variance with the universality of origin required. Title IV of the act provides generally for "a tax *or* excise" for the privilege

of using within this state any article of tangible personal property purchased after April 30, 1935.

Section 32 says that the provisions of Title IV shall not apply

". . . (c) In respect to the use of any article of tangible personal property the sale or use of which has already been subjected to a tax equal to or in excess of that imposed by this title [2%] whether under the laws of this state or of some other state of the United States."

Further, to make the legislative intention plain from another angle, the next section says:

"Sec. 33. If any article of tangible personal property has already been subjected to a tax by this or any other state in respect to its sale or use in an amount less than the tax imposed by this title, the provisions of this title shall apply, but at a rate measured by the difference only between the rate herein fixed [2%] and the rate by which the previous tax upon the sale or use was computed."

Therefore, if a resident of this state buys a trailer in this state and pays the required retail sales tax of 2% and buys one in Idaho and pays a sales tax, we assume, of 2%, and buys one in Illinois and pays a sales tax, we assume, of 3%, then the owner can use all of such property in this state free from this tax. On the contrary, if he buys a trailer in Oregon, which, we assume, has no sales tax law, then he must pay a tax of 2% to use it in this state; or if he buys one in Missouri, which, we assume, has a sales tax of 1%, then he must pay a tax of 1% to use it in this state. Such a law stifles competition and sets up an economic barrier against the commerce of other states.

The controlling question here is not the power of the state to tax or to levy an excise, but whether the legislature in the exercise of that power has enacted a law repugnant to the limitations imposed by the

constitution of the United States. United States Constitution, Article I, § 8; clause 3; 14th Amendment, § 1.
The case of *Baldwin v. Seelig, supra,* involved two appeals, one concerning an importer's sale of milk and cream to the importer's customers in original cans, the other involving sales after the articles were bottled by the importer in New York. An act of that state was considered under the commerce clauses of the United States constitution, and the principles announced in that portion of the opinion discussing the importer's sale in original packages is pertinent and should be applied in the present case as decisive of the question involved. The act was not directed to the importation of milk from any particular state; the milk involved was imported from Vermont. In that case, it was held that (Syllabus, 79 Law Ed. 1032):

"1. A New York Milk Control Act fixing minimum prices to be paid by dealers to producers for milk, and prohibiting the sale within the state of milk brought from outside the state unless the price paid to the producers would be lawful upon a like transaction within the state, is violative of the commerce clause of the Federal Constitution, and its enforcement will be restrained by injunction as applied to sales by a New York dealer in the original packages of milk imported from another state."

In the course of the opinion, upon speaking of the lack of power in a state to enact such a law, the court said:

"Such a power, if exerted, will set a barrier to traffic between one state and another as effective as if customs duties, equal to the price differential, had been laid upon the thing transported. *Imposts or duties upon commerce with other countries* are placed, by an express prohibition of the Constitution, beyond the power of a state, 'except what may be absolutely necessary for executing its inspection laws.' Constitution, Art. I, § 10, cl. 2; *Woodruff v. Parham,* 8 Wall.

123, 19 L. ed. 382. *Imposts and duties upon interstate commerce are placed beyond the power of a state, without the mention of an exception, by the provision committing commerce of that order to the power of the Congress. Constitution, Art. I, § 8, cl. 3. 'It is the established doctrine of this court that a state may not, in any form or under any guise directly burden the prosecution of interstate business.' International Textbook Co. v. Pigg,* 217 U. S. 91, 112, 30 S. Ct. 481, 487, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103, and see *Brennan v. Titusville,* 153 U. S. 289, 14 S. Ct. 829, 38 L. Ed. 719; *Brown v. Houston,* 114 U. S. 622, 5 S. Ct. 1091, 29 L. Ed. 257; *Webber v. Virginia,* 103 U. S. 344, 351, 26 L. Ed. 565; *Kansas City Southern R. Co. v. Kaw Valley Drainage District,* 233 U. S. 75, 79, 34 S. Ct. 564, 58 L. Ed. 857. *Nice distinctions have been made at times between direct and indirect burdens. They are irrelevant when the avowed purpose of the obstruction, as well as its necessary tendency, is to suppress or mitigate the consequences of competition between the states. Such an obstruction is direct by the very terms of the hypothesis.* We are reminded in the opinion below that a chief occasion of the commerce clauses was 'the mutual jealousies and aggressions of the States, taking form in customs barriers and other economic retaliation.' Farrand, Records of the Federal Convention, vol. II, p. 308; vol. III, pp. 478, 547, 548; the Federalist, No. XLII; Curtis, History of the Constitution, vol. 1, p. 502; Story on the Constitution, § 259. If New York in order to promote the economic welfare of her farmers, may guard them against competition with the cheaper prices of Vermont, the door has been opened to rivalries and reprisals that were meant to be averted by subjecting commerce between the states to the power of the nation." (Italics mine.)

If a resident of this state desires to purchase a trailer, it would be well for him to buy it in this state. The rule of *keep your money at home,* viewed apart from all considerations save only its apparent economic virtue, is highly commendatory, but it should

neither be compelled nor attempted at the expense of violating the limitations fixed by the constitution of the United States.

Nor can it make any difference whether this charge be called a tax upon imports from another state or simply a tax *or* excise. Section 31 of the act speaks of it as "a tax *or* excise." "The name by which the tax is described in the statute is, of course, immaterial. Its character must be determined by its incidents." *Dawson v. Kentucky Distilleries*, 255 U. S. 288, 41 S. Ct. 272; *Flint v. Stone Tracy Co.*, 220 U. S. 107, 31 S. Ct. 342, Ann. Cas. 1912B, 1312; *Aberdeen Savings & Loan Ass'n v. Chase*, 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232.

In my opinion, § 31 of the act providing for the levy and collection of a tax or excise for the privilege of using within this state any article of tangible personal property purchased in another state subsequent to April 30, 1935, is invalid.

HOLCOMB, J., concurs with MITCHELL, J.

MILLARD, C. J. (dissenting)—My illness is such as to preclude an extensive discussion of the reasons why I challenge the correctness of the majority opinion. To me, it seems perfectly clear that the section of the statute in question offends against the Federal constitution, and that it is likewise a property tax. If this be not a property tax, I cannot understand how any tax can be a property tax if the legislature desires to designate it an excise tax.

I concur in all that is said by Judge Mitchell.