[Nos. 25854, 25855. *En Banc.* January 14, 1936.]

GEORGE A. JENSEN *et al., Respondents,* v. H. H. HENNEFORD *et al., Appellants.*

PHILIP BRONSON, *Respondent,* v. H. H. HENNEFORD *et al., Appellants,* E. LOYD NELSON, *Intervener-respondent.*[1]

[1]Reported in 53 P. (2d) 607.

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellants.

*Tanner & Garvin,* for respondents Jensen *et al.*

*Green & Burnett,* for respondent Bronson.

*Allen, Froude & Hilen,* for intervener-respondent.

STEINERT, J.—These two actions were brought in the superior court of Thurston county to test the constitutionality of the personal net income tax act of 1935. The two cases were argued, heard, and disposed of by the court at the same time. The defendants demurred to each of the complaints and, upon the overruling of their demurrers, declined to plead further. The court thereupon entered a decree in each case, declaring the act unconstitutional and enjoining the tax commission from enforcing or attempting to enforce it. The defendants appealed in both cases.

In this court, the two appeals were likewise heard at the same time. Inasmuch as the complaints, taken together, illustrate the effect of the act upon different individuals, dissimilarly situated, we deem it advisable to treat the whole matter in one opinion as applicable to both cases.

The legislature at its 1935 session enacted chapter 178, Laws of 1935, pp. 660-704, Rem. 1935 Sup., § 11200-1 [P. C. § 7050h-61], *et seq.*, relating to personal net income tax. The act comprises seventy-two sections. We shall refer only to those sections which are material to these cases.

Section 1, p. 660, Rem. 1935 Sup., § 11200-1, defines various terms used in the act. The term "resident" is declared to apply only to individuals and, for the purpose of determining liability for the tax imposed thereby, to include any individual domiciled in the state of Washington and any other individual who maintains a permanent place of abode within the state or spends in the aggregate more than six months of the income year therein.

Section 2, p. 661, Rem. 1935 Sup., § 11200-2, which is the heart of the act, provides:

"There shall be levied, collected and paid to the state for each income year by every resident of the State of Washington *for the privilege of receiving income therein while enjoying the protection of its laws*—

"(a) A normal tax with respect to his income at the rate of three per cent of the amount of the net income in excess of the credits against net income as provided in sections 9 and 10;

"(b) A surtax with respect to his income at the rate of four per cent of all surtax net income in excess of $4,000." (Italics ours.)

Section 3, p. 662, Rem. 1935 Sup., § 11200-3, defines "surtax net income" as the amount of the net income in excess of the credits against net income provided in § 10.

Section 5, p. 662, Rem. 1935 Sup., § 11200-5, defines "net income" as the gross income computed under § 6, less the deductions allowed by § 7.

Under § 6, p. 662, Rem. 1935 Sup., § 11200-6, "gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal services of whatever kind, or from professions, vocations, trades, businesses, or dealings in property, whether real or personal, growing out of the owner-

ship, use of, or interest in such property, or from interest, rent, dividends, securities, or transactions of business carried on for profit, and from gains or profits and income derived from any source whatever. The following items are excluded as exempt from taxation: Amounts received from various kinds of insurance contracts, property acquired by gift, bequest, devise or inheritance, interest upon obligations of the United States, the rental value of any dwelling house furnished to a minister of the gospel as a part of his compensation, the salaries, pensions, and other compensation received by officials, employees and veterans of the United States, and stock dividends of a corporation distributed to its own stockholders.

Section 7, p. 664, Rem. 1935 Sup., § 11200-7, provides that, in computing net income, various deductions are to be allowed, including (a) certain specified business expenses, (b) interest paid on indebtedness, (c) taxes paid or accrued within the income year and imposed by the authority of the United States or of any state, and (d) to (m), inclusive, other deductions not necessary to be detailed here.

Section 9, p. 670, Rem. 1935 Sup., § 11200-9 (which must be read as a part of § 2(a), above), provides that, for the purpose of the normal tax, but not for the surtax, certain credits against the net income shall be allowed. These include (a) the amounts received as dividends from corporations subject to taxation under a statute imposing a tax upon corporations according to or measured by the net income thereof, (b) the amounts received as interest upon obligations of the state of Washington or of any political subdivision thereof, which is included in the gross income under § 6, and (c) "Ten per cent of the amount of the earned net income, but not in excess of ten per cent of the amount of the net income." In no case

is the earned net income to be considered to be more than fourteen thousand dollars.

Section 10, p. 671, Rem. 1935 Sup., § 11200-10 (which must also be read as a part of § 2 (a), above), so far as it is material here, provides as follows:

"There shall be allowed for the purposes of the normal tax and the surtax the 'following credits against net income:

"(a) In the case of a single person, a personal exemption of $1,000; or in the case of the head of a family or a married person living with husband or wife, a personal exemption of $2,500. . . .

"(b) $400 for each person (other than husband or wife) dependent upon and receiving his chief support from the taxpayer if such dependent person is under eighteen years of age or is incapable of self-support because mentally or physically defective;"

Section 70, p. 704, Rem. 1935 Sup., § 11200-70, provides:

"If any section, clause or part of this act shall for any reason be adjudged invalid or unconstitutional, such adjudication shall not affect the remaining portions of the act."

We shall now refer briefly to the respective complaints as indicating the grounds upon which the act is alleged to be unconstitutional as to each complainant, according to the argument to be considered later.

Respondent Jensen alleges in his complaint that, under the terms of the act, he will be subject to both a normal tax and a surtax. Respondent Hoffman alleges that, as the owner of real estate, he will receive net income in the form of *rents;* that he will be subject to both normal tax and surtax; and that his real estate has been assessed for taxation purposes for 1935. Respondent Maples alleges that he owns and operates certain automotive trucks from which he derives a net income, and is in competition with *cor-*

*porations* doing a similar business; that, during 1935, he paid property taxes on such trucks and also a state license fee for the privilege of hauling for hire; that he is subject to both normal tax and surtax; and that the corporations who are in competition with him are not subject to taxation under the act. Respondent Williams alleges that he is unmarried and an attorney; that for 1935 his net income will exceed two thousand dollars but will be less than twenty-five hundred dollars; that many attorneys who are married receive as much net income as he, or more, but will not be subject to the act; and that other attorneys, unmarried and whose incomes are less than one thousand dollars a year, will not be subject to the act. Respondent Bronson alleges that he is a single man, a resident of, and domiciled in, the state of Washington, and that he is subject to the act. Intervener Nelson alleges that he is a resident of, and domiciled in, the state of Washington and is engaged in business therein; that his income is derived from various sources, including interest on bonds, dividends on corporate stock, and salary for personal services; that he is subject to both normal tax and surtax; that, by the act, corporations are not subject to the tax; and that he will be taxed upon a different basis than individuals having an income of less than three thousand dollars a year. Taken together, the various complaints allege that the act violates the fourteenth amendment of the United States constitution and also Art. I, §§ 3 and 12, Art. XII, and the fourteenth amendment of the constitution of the state of Washington.

At the very threshold of the case is the question whether an income tax is, under the provisions of the fourteenth amendment of the state constitution, a property tax, as the respondents contend, or whether it is an excise tax, as appellants contend. That ques-

tion has recently been squarely presented to this court and has been definitely determined by it. *Culliton v. Chase,* 174 Wash. 363, 25 P. (2d) 81. In that case, it was held that the state income tax law of 1932 (initiative measure 69, chapter 5, Laws of 1933, p. 49, Rem. 1933 Sup., § 11200-1 *et seq.*) was unconstitutional and void. The headnotes to the reported decision in that case reveal that the question was exhaustively briefed and discussed by an array of eminent counsel, and the various opinions in the case reflect the views of the respective members of this court. Although four members of the court dissented, it was held by the majority that, under our constitution, income is property, and that an income tax is a property tax, and not an excise tax.

In the very able brief of the *Attorney General,* it is strenuously urged that we reconsider that question, both upon the authorities formerly considered and also upon the authority of certain later decisions, which, it is suggested, indicate that we have since receded from our former view. Inasmuch as the majority members of this court, as now constituted, hold the same views as expressed by them in the *Culliton* case, it would serve no useful purpose to enter upon a further discussion of the authorities considered in that case.

The more recent decisions upon which reliance is placed by the *Attorney General* are *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91; *Supply Laundry Co. v. Jenner,* 178 Wash. 72, 34 P. (2d) 363; *Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016; *Vancouver Oil Co. v. Henneford,* 183 Wash. 317, 49 P. (2d) 14. The first two of these cases arose out of chapter 191, Laws of 1933, p. 869, Rem. 1933 Sup., § 8326-1 [P. C. § 7068-31] *et seq.* The other two arose out of chapter 180, Laws of 1935, p. 706, Rem. 1935 Sup., § 8370-1 [P. C. § 7030-61] *et seq.* In both the

*Stiner* case and the *Supply Laundry Co.* case, an attack was made on the constitutionality of an act imposing a tax on the privilege of engaging in business activities in this state. In the *Morrow* case, an attack was made on Title III of an act levying a sales tax, and in the *Vancouver Oil Co.* case an attack was made on Title IV of the same act, levying a compensating tax.

In none of the prevailing opinions in those cases, however, was the *Culliton* case mentioned, and it is quite obvious, we think, that nothing was said, or intended to be suggested, in any of the opinions that the court, as then constituted, had receded from its former emphatic declaration that, under our constitution, income is property, and that an income tax is a property tax. It is therefore sufficient for present purposes to say that we now affirm the *Culliton* case.

■ The appellants contend, however, that there is a vital distinction between the *Culliton* case and this case, in that the tax imposed by the 1932 act, on which the *Culliton* case was based, was avowedly a tax imposed directly on net income, while in this case the act under consideration imposes, not a direct tax on net income, but merely a tax on the privilege of *receiving net income.*

It is true that the legislature has so labeled the 1935 act. But the legislative body cannot change the real nature and purpose of an act by giving it a different title or by declaring its nature and purpose to be otherwise, any more than a man can transform his character by changing his attire or assuming a different name. The legislature may declare its intended purpose in an act, but it is for the courts to declare the nature and effect of the act. The character of a tax is determined by its incidents, not by its name. *Aberdeen Savings & Loan Ass'n v. Chase,* 157 Wash. 351,

289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232; *Culliton v. Chase,* 174 Wash. 363, 25 P. (2d) 81; *Dawson v. Kentucky Distilleries & Warehouse Co.,* 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638; *Macallen Co. v. Massachusetts,* 279 U. S. 620, 49 S. Ct. 432, 73 L. Ed. 870, 65 A. L. R. 866; *Educational Films Corp. v. Ward,* 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 42, 71 A. L. R. 1226; *Stewart Dry Goods Co. v. Lewis,* 294 U. S. 550, 55 S. Ct. 525, 79 L. Ed. 539.

The 1935 act *purports* to levy a tax upon "the privilege of receiving income." But an examination of the various provisions of the act shows clearly that the legislature was concerned with the *property* (income) upon which the amount of the tax was to be levied, not with the mere privilege of the individual to receive the income. When a tax is, in truth, levied for the exercise of a substantive privilege granted or permitted by the state, the tax may be considered as an excise tax and sustained as such. Illustrations of such taxes are found in the cases of *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91, and *Supply Laundry Co. v. Jenner,* 178 Wash. 72, 34 P. (2d) 363 (for the privilege of engaging in business activities), and *Educational Films Corp. v. Ward,* 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 42, 71 A. L. R. 1226 (for the privilege of exercising a corporate franchise within the state).

But the mere right to own and hold property cannot be made the subject of an excise tax, because to tax by reason of ownership of property is to tax the property itself. *Dawson v. Kentucky Distilleries & Warehouse Co.,* 255 U. S. 288, 41 S. Ct. 272; *Thompson v. Kreutzer,* 112 Miss. 165, 72 So. 891; *In re Opinion of Justices,* 208 Mass. 616, 94 N. E. 1043; 26 R. C. L. 236, § 209.

The right to receive property (income in this instance) is but a necessary element of ownership, and,

without such right to receive, the ownership is but an empty thing and of no value whatever. "In common understanding, to hold property is to own it. In order to own or hold, one must acquire." *McFeely v. Commissioner of Internal Revenue,* 296 U. S. 102, 56 S. Ct. 54. Conversely, the mere potential privilege of receiving earned income amounts to nothing unless and until the income is received. The right to receive, the reception, and the right to hold, are progressive incidents of ownership and indispensable thereto. To tax any one of these elements is to tax their sum total, namely, ownership, and, therefore, the property (income) itself. Despite its change of designation, we are convinced that the 1935 act imposes a tax on net income and is, therefore, a property tax.

Since the act imposes a property tax, it falls within the fourteenth amendment of the state constitution, the pertinent provisions of which read as follows:

"All taxes shall be *uniform upon the same class of property within the territorial limits of the authority levying the tax* and shall be levied and collected for public purposes only. The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class: . . ." (Italics ours.)

Those provisions of the constitution were fully analyzed, discussed, and defined in *Culliton v. Chase,* 174 Wash. 363, 25 P. (2d) 81, and we need not here add anything further to that discussion.

The question then arises whether the 1935 act offends the constitutional provision of uniformity. If it does, then to the extent of such violation the act is unconstitutional and void. In considering this question, we shall first dispose of the surtax feature, and after that the provision for normal tax.

It could not be contended, nor do the appellants now contend, that the surtax does not operate to make the tax a graduated one. Net incomes of not to exceed four thousand dollars are taxed at the rate of three per cent per annum, while net incomes in excess of that amount are taxed at the rate of four per cent per annum. We quote the language of *Culliton v. Chase,* 174 Wash. 363, 25 P. (2d) 81, as applicable here: "It needs no argument to demonstrate that the income taxes here levied are wholly lacking in uniformity." Since the act, by reason of the surtax provision, violates the uniformity clause of the fourteenth amendment, it must, so far as the surtax is concerned, be held to be unconstitutional.

The question then arises whether this result renders the entire act unconstitutional, or only in part so. In determining whether the act in its entirety is to be held unconstitutional by reason of the fact that the provision with reference to surtax is unconstitutional, we must consider whether the provisions for the normal tax and for the surtax, respectively, are so connected and interdependent in their meaning and purpose that it could not be believed that the legislature would have passed one without the other; further, whether the elimination of the provisions for surtax would still leave a complete and workable act.

Section 70, p. 704, of the act, already ·quoted, provides that, if any section, clause, or part of it shall for any reason be adjudged invalid or unconstitutional, such adjudication shall not affect the remaining provisions of the act.

Construing an identical section of another act, in *State ex rel. King County v. State Tax Commission,* 174 Wash. 336, 24 P. (2d) 1094, we said at page 340 of the state report:

"Such a provision furnishes assurance to the courts that they may properly sustain the separate sections or provisions of a partially invalid act without hesitation or doubt as to whether they would have been adopted, even if the legislature had been advised of the invalidity of the part."

See, also, *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466; *Gottstein v. Lister*, 88 Wash. 462, 153 Pac. 595, Ann. Cas. 1917D 1008; *Nipges v. Thornton*, 119 Wash. 464, 206 Pac. 17.

In this case, the legislature has made it clear that it would have passed the act with reference to the normal tax even though it had been advised that the provisions for surtax were invalid. Moreover, the wording and arrangement of the act with reference to the two species of tax are such as to permit the elimination of the surtax feature and leave a complete act with reference to normal tax. Whether the remainder, though complete, is workable, will be considered later.

From this point, therefore, we will proceed as though the act did not include the provisions for surtax, and will consider the case from the standpoint of the normal tax alone.

Turning, now, to § 2(a) of the act, respecting normal tax, we observe at once that its phraseology does not express its full sense and meaning *in totidem verbis*. Its terms are not, in themselves, explicit or self-expository in statement, but are referential in mode of expression. The section projects itself upon other sections of the act, by leaving to them the definition of its terms and referring to them for indication of the extent of its application. The subject upon which the tax prescribed by § 2(a) operates is "Net income in excess of the credits against net income as provided in sections 9 and 10." Net income is defined

by § 5 as limited by § 6. Sections 5, 6, 9 and 10 must therefore be read into § 2(a). In other words, §§ 5, 6, 9 and 10 are integral parts of § 2(a).

It will be observed that § 6(a) includes *rents* from real estate as a part of "gross income" and, in turn, as a part of "net income."

A tax upon rents from real estate is a tax upon the real estate itself. *Pollock v. Farmers' Loan & Trust Co.*, 157 U. S. 429, 480, 15 S. Ct. 673, 39 L. Ed. 759. Hence, a tax upon rents, as in the case of respondent Hoffman, is a second tax upon real estate. There is no such tax levied by the act upon unrented real estate, nor upon rents from real estate which is owned by nonresidents. The fourteenth amendment of the constitution, however, says that "taxes shall be uniform upon the same class of property," and that "all real estate shall constitute one class," the only exception being with reference to mines, mineral resources, and lands devoted to reforestation. The 1935 act thus creates, for income tax purposes, two classes of real estate, (1) that which is income-bearing, and (2) that which is either not income-bearing or else is owned by nonresidents. Section 2(a) therefore violates the uniformity provision of the constitution in a very vital particular and must be held void so far as rents from income-producing real estate are concerned.

We proceed next to a consideration of the "credits against net income" allowed in § 2(a), as specifically detailed in § 10. In determining the amount of net income on which an unmarried man is taxed, a credit of one thousand dollars is allowed; in determining the amount of net income on which a married man is taxed, a credit of twenty-five hundred dollars is allowed, with a further deduction, in either case, of four hundred dollars for each dependent. In other words, "net income," which, under the fourteenth amend-

ment, constitutes *one class* of property, is reclassified or graduated by the act so as to constitute at least two distinct classes, with the result that, as between the two, the tax is disproportionate. The normal tax, therefore, just as the surtax, violates the uniformity provision of the constitution.

The question then arises whether the objectionable features of the normal tax may be eliminated, under the provisions of § 70, and still leave a complete and workable act. In our opinion, any process of elimination exercised under § 70 would destroy the act entirely. This would be true whether § 10 be considered by itself or read as part of § 2(a).

If, considering § 10 by itself, we eliminate the credit allowed to single persons, it would not remedy the situation but, manifestly, would make it worse. If, on the other hand, we eliminate the credits allowed to married persons and those having dependents, the same result would follow. If we eliminate the entire section, then we will not merely have taken something from the act, but will have added something to it, because the act would then operate on all net incomes of whatever amount. But the legislature never contemplated, nor intended to accomplish, such a result. The wording of the section shows a contrary intention.

If we consider § 10 as part and parcel of § 2(a), as it should be, then we face an even more difficult situation. It would be impossible to translate § 10 into § 2(a) in such a way that any part of it could be eliminated without completely mutilating the latter section. We would have to clip sentences midway in their expression, or else sever bodily from the section the words "in excess of the credits against net income as provided in sections 9 and 10." In either event, we would, as stated above, effect a result that the legislature never contemplated nor intended to accomplish.

In short, any attempt at elimination would involve a complete reconstruction, indeed a re-creation, of the act and would result in imputing to the legislature an intention which the present wording of the act does not sustain. Such a process indulged in, would not be judicial, but would be legislative, and would assume a power that we are not permitted to exercise. *Hill v. Wallace,* 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822; *Williams v. Standard Oil Co.,* 278 U. S. 235, 49 S. Ct. 115, 73 L. Ed. 287, 60 A. L. R. 596; *Eliasberg Bros. Mercantile Co. v. Grimes,* 204 Ala. 492, 86 So. 56, 11 A. L. R. 300.

■ Respondents also contend that the 1935 act is unconstitutional and void for the further reason that its operation is limited to individuals and does not include corporations. This contention cannot, in our opinion, be sustained. Almost contemporaneously with the passage of chapter 178, Laws of 1935, p. 660, Rem. 1935 Sup., § 11200-1 [P. C. § 7050h-16] *et seq.,* the legislature also passed the revenue act of 1935, chapter 180, Laws of 1935, p. 706, Rem. 1935 Sup., § 8370-1 [P. C. § 7030-61] *et seq.* Title XVII, p. 811, of the latter act has reference to corporate net income. Both acts relate to taxation and are for revenue. The two acts must therefore be read in *pari materia.* 25 R. C. L. 1062, § 286. When so read they form a harmonious whole, disclosing the intention of the legislature to tax the income of both individuals and corporations on a practically equal basis.

For the reasons given, anterior to the last contention, we declare chapter 178, Laws of 1935, pp. 660-704, unconstitutional and void, both as to the normal tax and as to the surtax.

The judgment is affirmed.

MAIN, MITCHELL, and HOLCOMB, JJ., concur.

BEALS, J., dissents.

MILLARD, C. J., (concurring)—None of the authorities cited justifies or excuses the minority's disregard of the doctrine of *stare decisis*. We held in *Aberdeen Savings & Loan Ass'n v. Chase*, 157 Wash. 351, 289 Pac. 536, 290 Pac. 697, 71 A. L. R. 232, and in *Culliton v. Chase*, 174 Wash. 363, 25 P. (2d) 81, that, under our constitution, income is property and that an income tax is a property tax. From that declaration, this court has never departed, and the people have not seen fit to amend the constitution to permit us to hold otherwise. It is true that some of the judges who concurred in the majority view in the first case cited dissented when the second case was decided.

"In future cases, even a dissenting justice should be bound by the decision of the majority until and unless authoritatively overruled or reversed by some higher tribunal. . . ." *Culliton v. Chase*, 174 Wash. 363, 25 P. (2d) 81.

Surely, the rule of *stare decisis*—a rule whereby uniformity, certainty and stability in the law are obtained—should now apply. This is not a forum where personal predilection should obtain. Political expediency has no place in this tribunal. Neither threats nor promises should dissuade one from the performance of duty. To sacrifice the rule of legal stability for acquisition or retention of official position is a price no honest person can exact, a price no self-respecting person can pay. Is a legal principle more than once enunciated, and from which the court has never receded, to have no binding effect?

The judgment should be affirmed.

BLAKE, J. (dissenting)—If the authority of *Culliton v. Chase*, 174 Wash. 363, 25 P. (2d) 81, stood unimpaired, I should feel bound, under the rule of *stare decisis,* to acquiesce in the decision in the instant case.

But, since that case was decided, this court has handed down four decisions which, to my mind, destroy its authority as a precedent. Indeed, these later decisions undermine the very theory upon which *Culliton v. Chase, supra,* was decided. It will be remembered that the court there held that *net income* was property, and that a law providing for a graduated tax upon such incomes transgressed the uniformity clause of the fourteenth amendment to the state constitution.

In *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91, the court upheld the highly discriminatory occupation tax act (chapter 191, Laws of 1933, p. 869), on the ground that the imposition exacted was an excise. The tax exacted by that act is levied on *gross income.* So, necessarily, the theory of the decision is that *gross income* is *not* property. Now, what tangible difference there may be between *net income* and *gross income,* which endows the one with the character of property and not the other, I have never been able to see. There are, however, obvious differences in the effect of taxes levied upon them.

The tax on *gross income* is the most oppressive kind of tribute a state may exact from its citizens. It falls with equal rigor on the rich and the poor alike. It is exacted without regard to the benefits the citizen may derive from the privilege of engaging in business. Whether the privilege proves an asset or a liability, a boon or a burden, he must pay on gross receipts without regard to costs of operation. Such a tax may, and frequently does, mean the difference in profit and loss in the enterprise.

On the other hand, a graduated tax, levied on net income, falls only on those who most enjoy the protection of the state. It is, of all taxes, the least oppressive. For it is measured solely by ability to pay. It is

borne in direct ratio with the benefits derived under the constitutional guarantees of life, liberty and property (and the pursuit of happiness).

This tax on *gross income* was again upheld in *Supply Laundry Co. v. Jenner,* 178 Wash. 72, 34 P. (2d) 363, the court saying that the exaction

" . . . was an excise tax, and not a property tax, and that, therefore, the uniformity clause contained in the fourteenth amendment to our constitution . . . did not apply."

Now we come to the sales tax. (Title III, chapter 180, Laws 1935, p. 721.) This act was first before the court in *Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016. It was there held, in accord with the weight of authority, that the tax was

" . . . an excise, not required to be apportioned, and therefore not obnoxious to the cited provisions of the state and Federal constitutions."

Now, that tax is not levied against the seller of property. It is levied against the purchaser. The seller merely acts as tax collector—the agent of the state. *Morrow v. Henneford, supra.* The amount of the tax is added to the purchase price of the specific article bought. I am thoroughly in accord with the view that such a tax is an excise. But I am unable to comprehend the reasoning which underlies the holding, on the one hand, that such a tax is *not* a property tax, and, on the other hand, that a tax on net income *is* a property tax.

The sales tax operates directly upon specific, tangible property—property not only susceptible of ownership but to manual possession. While, on the other hand, a tax on net income operates upon an intangible, inchoate right—susceptible, indeed, to ownership, but not susceptible to manual possession. The concept "income" is something that may be grasped by the

mind but not with the hand. It may be transformed into something susceptible to manual possession—money, stocks, bonds, automobiles, etc. But then it loses its identity as "income" and becomes "property" in the sense that that term is used in the fourteenth amendment.

In *Vancouver Oil Co. v. Henneford,* 183 Wash. 317, 49 P. (2d) 14, the court had before it another phase of the sales tax act—the so-called compensating tax. (Title IV, chapter 180, Laws 1935, p. 726.) The effect of this provision is to levy a tax on one who purchases property outside the state and uses it within the state. Such a one is required to pay the same amount in taxes as though he had bought the property within the state. The tax is defined as "a tax or excise for the privilege of *using* within this state an article purchased" without the state. (See, Title IV, §§ 31, 32, chapter 180, Laws 1935, p. 726.) In the case last cited, the court upheld this tax as an excise, in face of the contention that it was a direct levy on specific, tangible property, saying:

"With reference to the first contention, that is, that the tax is a property tax, little need be said, because this contention is covered by what is said in the recent case of *Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016, where it was held that the tax provided for in chapter 180 was an excise tax, and not a property tax."

Now, if it may be said that a tax levied "for the privilege of *using* . . . any article of tangible personal property" is *not* a property tax, I fail to see how, in reason, it may be said that a tax, levied on the privilege of using so intangible a thing as net income, *is* a property tax. If the one is an excise, the other is more clearly such.

In face of these four decisions, the case of *Culliton*

*v. Chase, supra,* has, as authority for the proposition that *net income* is property and that a graduated tax thereon violates the fourteenth amendment, lost its force as completely as if it had been flatly overruled. Consequently, I feel at liberty to adhere to the views set out in the dissenting opinion in that case.

I therefore dissent.

TOLMAN and GERAGHTY, JJ., concur with BLAKE, J.